# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEXIA HOLDINGS, INC.; FSA ASSET MANAGEMENT LLC; DEXIA CREDIT LOCAL, NEW YORK BRANCH; NEW YORK LIFE INSURANCE COMPANY; NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION; THE MAINSTAY FUNDS; MAINSTAY VP SERIES FUND, INC.; TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA; TIAA-CREF LIFE INSURANCE COMPANY; TIAA GLOBAL MARKETS, INC.; COLLEGE RETIREMENT EQUITIES FUND; AND THE TIAA-CREF FUNDS, | ECF CASE |
| Plaintiffs, | |
| v. | Civil No. 11-01259(DLC) |
| COUNTRYWIDE FINANCIAL CORPORATION; COUNTRYWIDE HOME LOANS, INC.; COUNTRYWIDE HOME LOANS SERVICING LP; CWALT, INC.; CWMBS, INC., CWABS, INC.; CWHEQ, INC.; COUNTRYWIDE SECURITIES CORPORATION; COUNTRYWIDE CAPITAL MARKETS, LLC; ANGELO MOZILO; DAVID A. SAMBOL; BANK OF AMERICA CORP.; BAC HOME LOANS SERVICING, L.P.; NB HOLDINGS CORPORATION; STANFORD L. KURLAND; DAVID A. SPECTOR; ERIC P. SIERACKI; N. JOSHUA ADLER; RANJIT KRIPALANI; AND JENNIFER S. SANDEFUR, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

## DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND, JOINT MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO TRANSFER, AND JOINT MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................................1

ARGUMENT .....................................................................................................................3

I.   PLAINTIFFS' MOTION TO REMAND SHOULD BE DENIED. ....................................3

    A.   Removal Was Proper Under "Related To" Bankruptcy Jurisdiction.......................3

    B.   The Equitable Considerations Weigh Against Remand...........................................5

II.   THIS CASE SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT. .............6

III.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY. .............8

    A.   Plaintiffs' 1933 Act Claims Are Time Barred. ......................................................8

        1.   Absent Tolling, All Time Periods Have Expired........................................ 9

        2.   Class Action Tolling Does Not Apply..................................................... 10

    B.   Count VIII Is Preempted By The Martin Act. ......................................................13

    C.   No Material Misstatement Or Omissions Are Alleged..........................................14

        1.   Any Representations Made Were Limited And Qualified........................ 14

        2.   The Complaint Fails To Plead Fraud With Particularity. ......................... 15

        3.   No Alleged Misrepresentation Has Been Shown To Be Material. ........... 16

a.  No Misstatement Has Been Tied To Any Of The Pooled Loans. ................................................................ 16

b.  Mortgage Loan Characteristics Were Disclosed In Detail. .......... 17

c.  Appraisals And Ratings Are Non-Actionable Opinions. .............. 18

d.  Allegations Taken From Other Complaints Or Media Reports. ........................................................................ 19

e.  No Misstatement As To Title Transfer Has Been Pled. ............... *20*

D.  The Complaint Does Not Adequately Allege Scienter. ........................................ 20

E.  Legally Cognizable Injury Is Not Alleged. ............................................................ 23

F.  Loss Causation Has Not Been Alleged. ................................................................. 24

G.  The Section 12 Claims Fail. .................................................................................. 25

H.  The Secondary Liability Claims Are Not Adequately Pleaded. ............................ 27

I.  The Successor Liability Claims Should Be Dismissed. .......................................... 28

CONCLUSION .................................................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps;">CASES</span>

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.,*
   651 F. Supp. 2d 155 (S.D.N.Y. 2009) ..................................................................................28

*Adair v. Microfield Graphics, Inc.,*
   2000 WL 1716340 (S.D.N.Y. Nov. 16, 2000) ........................................................................8

*Alexander v. Franklin Res., Inc.,*
   2007 WL 518859 (N.D. Cal. Feb. 14, 2007) ..........................................................................8

*Am. Pipe & Constr. Co. v. Utah,*
   414 U.S. 538 (1974) ..........................................................................................................10, 11

*Amick v. Am. Express Travel Related Servs. Co.,*
   2010 WL 307579 (S.D.N.Y. Jan. 26, 2011) ...................................................................3, 7, 8

*APA Excelsior III L.P. v. Premiere Techs., Inc.,*
   49 F. Supp. 2d 664 (S.D.N.Y. 1999) ......................................................................................7

*Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide Fin. Corp.,*
   No. CV 07-07097 MRP (C.D. Cal. Mar. 19, 2009) ..............................................................29

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009) ..........................................................................................................15

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
   493 F.3d 87 (2d Cir. 2007) ....................................................................................................15

*Babcock v. Jackson,*
   191 N.E.2d 279 (N.Y. 1963) .................................................................................................29

*Bastian v. Petren Res. Corp.,*
   892 F.2d 680 (7th Cir. 1990) ................................................................................................25

*Berman v. Informix Corp.,*
   30 F. Supp. 2d 653 (S.D.N.Y. 1998) ...................................................................................6, 8

*Blackmoss Invs. Inc. v. ACA Capital Holdings, Inc.,*
   2010 WL 148617 (S.D.N.Y. Jan. 14, 2010) ........................................................................24

*Boguslavsky v. Kaplan,*
   159 F.3d 715 (2d Cir. 1998) ..................................................................................................28

*Boilermakers Nat'l Annuity Trust Fund v. WaMu Mortg. Pass Through Cert.*,
    748 F. Supp. 2d 1246 (W.D. Wash. 2010) ................................................................12

*Butcher v. Gerber Prods. Co.*,
    1998 WL 437150 (S.D.N.Y. Aug. 3, 1998) ..............................................................8

*Caiafa v. Sea Containers Ltd.*,
    331 F. App'x 14 (2d Cir. May 19, 2009) .................................................................26

*Cartier v. D & D Jewelry Imports*,
    510 F. Supp. 2d 344 (S.D.N.Y. 2007) .....................................................................6

*Castellano v. Young & Rubicam, Inc.*,
    257 F.3d 171 (2d Cir. 2001) ...................................................................................14

*City of Ann Arbor Emp. Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.*,
    572 F. Supp. 2d 314 (E.D.N.Y. 2008) ....................................................................4

*D.E. & J. Ltd. P'ship v. Conaway*,
    284 F. Supp. 2d 719 (E.D. Mich. 2003) .................................................................25

*DeMaria v. Andersen*,
    318 F.3d 170 (2d Cir. 2003) ...................................................................................9

*Denny v. Barber*,
    576 F.2d 465 (2d Cir. 1978) ...................................................................................16

*Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*,
    130 B.R. 405 (S.D.N.Y. 1991) ..............................................................................5, 6

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ...............................................................................................3, 25

*Eaves v. Designs for Fin., Inc.*,
    2011 WL 1236173 (S.D.N.Y. Mar. 30, 2011) .......................................................23

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009) ...................................................................................27

*Emp. Ret. Sys of Gov't of V.I. v. J.P. Morgan Chase & Co.*,
    2011 WL 1201520 (S.D.N.Y. Mar. 30, 2011) .......................................................19

*Finkel v. Stratton Corp.*,
    962 F.2d 169 (2d Cir. 1992) ...................................................................................9

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994) .....................................................................................24

*Footbridge Ltd. Trust v. Countrywide Fin. Corp*,
    2011 WL 907121 (S.D.N.Y. Mar. 16, 2011) .................................................. passim

*Footbridge Ltd. v. Countrywide Home Loans, Inc.*,
    2010 WL 3790810 (S.D.N.Y. Sept. 28, 2010) ............................................... passim

*Fuji Photo Film Co. v. Lexar Media, Inc.*,
    415 F. Supp. 2d 370 (S.D.N.Y. 2006) ........................................................ 8

*Geinko v. Padda*,
    2002 WL 276236 (N.D. Ill. Feb. 27, 2002) ................................................ 20

*Goggins v. Alliance Capital Mgmt., L.P.*,
    279 F. Supp. 2d 228 (S.D.N.Y. 2003) ..................................................... 6, 7

*Goldman v. Strough Real Estate, Inc.*,
    2 A.D.3d 677 ............................................................................... 24

*Gustafson v. Alloyd Co.*,
    513 U.S. 561 (1995) ..................................................................... 9, 26

*Heilbrunn v. Sun Chem. Co.*,
    146 A.2d 757 (Del. Ch. 1958) .............................................................. 29

*Hunsaker v. Hurwitz*,
    14 F. App'x 826 (9th Cir. 2001) .......................................................... 11

*In re Axis Capital Holdings Ltd. Sec. Litig.*,
    456 F. Supp. 2d 576 (S.D.N.Y. 2006) ................................................... 15, 20

*In re Barclays Bank PLC Sec. Litig.*,
    No. 09. Civ. 1989 (PAC), slip op. (S.D.N.Y. Jan. 5, 2011) ............................... 26

*In re Bayou Hedge Fund Litig.*,
    534 F. Supp. 2d 405 (S.D.N.Y. 2007) ...................................................... 14

*In re Beacon Assocs. Litig.*,
    745 F. Supp. 2d 386 (S.D.N.Y. 2010) ................................................... 13, 14

*In re Boston Reg'l Med. Ctr., Inc.*,
    410 F.3d 100 (1st Cir. 2005) ............................................................ 4, 5

*In re Collins & Aikman Corp. Sec. Litig.*,
    438 F. Supp. 2d 392 (S.D.N.Y. 2006) ....................................................... 8

*In re Colonial Ltd. P'ship Litig.*,
    854 F. Supp. 64 (D. Conn. 1994) .......................................................... 12

*In re Copper Antitrust Litig.*,
 436 F.3d 782 (7th Cir. 2006) ........................................................................11

*In re Cross Media Mktg. Corp.*,
 367 B.R. 435 (Bankr. S.D.N.Y. 2008) ...........................................................4

*In re Crude Oil Commodity Litig.*,
 2007 WL 1946553 (S.D.N.Y. 2007) ..............................................................20

*In re Cuyahoga Equip. Corp.*,
 980 F.2d 110 (2d Cir. 1992) ............................................................................3

*In re Deutsche Telekom AG Sec. Litig.*,
 2002 WL 244597 (S.D.N.Y. Feb. 20, 2002) ..................................................27

*In re DPH Holdings Corp.*,
 437 B.R. 88 (S.D.N.Y. 2010) ..........................................................................4

*In re Enron Corp. Sec.*,
 465 F. Supp. 2d 687, 718 (S.D. Tex. 2006) ...................................................11

*In re Federal-Mogul Global, Inc.*,
 300 F.3d 368 (3d Cir. 2002) ............................................................................4

*In re Fosamax Prods. Liab. Litig.*,
 694 F. Supp. 2d 253 (S.D.N.Y. 2010) ...........................................................11

*In re Global Crossing Ltd. Sec. Litig.*,
 2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005) .................................................28

*In re IndyMac Mortg.-Backed Sec. Litig.*,
 718 F. Supp. 2d 495 (S.D.N.Y. 2010) ......................................................18, 19

*In re IPO Sec. Litig.*,
 544 F. Supp. 2d 277 (S.D.N.Y. 2008) ...........................................................23

*In re Koreag, Controle et Revision S.A.*,
 961 F.2d 341 (2d Cir.1992) ............................................................................29

*In re Lehman Bros. Sec. & ERISA Litig.*,
 2011 WL 1453790 (S.D.N.Y. Apr. 13, 2011) .......................................1, 10, 11

*In re Lehman Bros. Sec. & ERISA Litig.*,
 684 F. Supp. 2d 485 (S.D.N.Y. 2010) ...........................................................19

*In re McKesson HBOC, Inc. Sec. Litig.*,
 126 F. Supp. 2d 1248 (N.D. Cal. 2000) .........................................................29

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   2008 WL 2019680 (S.D.N.Y. May 8, 2008) ........................................................25

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   218 F.R.D. 76 (S.D.N.Y. 2003) ........................................................20

*In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*,
   2010 WL 3239430 (S.D.N.Y. Aug. 17, 2010) ........................................13, 26

*In re Nematron Corp. Sec. Litig.*,
   30 F. Supp. 2d 397 (S.D.N.Y. 1998) ........................................................8

*In re Refco, Inc. Sec. Litig.*,
   628 F. Supp. 2d 432 (S.D.N.Y. 2008) ........................................................4

*In re Resorts Int'l, Inc.*,
   372 F.3d 154 (3d Cir. 2004) ........................................................5

*In re Wash. Mut., Inc. Sec., Deriv. & ERISA Litig.*,
   694 F. Supp. 2d 1192 (W.D. Wash. 2009) ........................................................26

*In re Wells Fargo Mortgage-Backed Cert. Litig.*,
   2010 WL 4117477 (N.D. Cal. Oct. 19, 2010) ........................................................12

*Irwin v. Dep't of Veterans Affairs*,
   498 U.S. 89 (1990) ........................................................11

*Jones v. Walgreen Co.*,
   463 F. Supp. 2d 267 (D. Conn. 2006) ........................................................8

*Kiobel v. Royal Dutch Petroleum Co.*,
   621 F.3d 111 (2d Cir. 2011) ........................................................15

*Kolbeck v. LIT Am., Inc.*,
   939 F. Supp. 240 (S.D.N.Y. 1996) ........................................................28

*Kuriakose v. Fed. Home Loan Mortg. Corp.*,
   No. 08-cv-07281-JFK, slip op. (S.D.N.Y. Mar. 30, 2011) ........................................................25

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
   501 U.S. 350 (1991) ........................................................10

*Langley Partners, L.P., v. Tripath Tech., Inc.*,
   2005 WL 2482527 (S.D.N.Y. Oct. 6, 2005) ........................................................7

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005) ........................................................25

*Lerner v. Fleet Bank, N.A.,*
   459 F.3d 273 (2d Cir. 2006)................................................................21, 28

*Lewis v. Ward,*
   852 A.2d 896 (Del. 2004) ..........................................................................30

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,*
   2008 WL 4449508 (N.D. Tex. Sept. 30, 2008)...........................................6

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,*
   594 F.3d 383 (5th Cir. 2010) ...............................................................4, 14

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.,*
   238 F.3d 363 (5th Cir. 2001) .....................................................................27

*Luminent Mortg. Cap. Inc. v. Merrill Lynch & Co.,*
   652 F. Supp. 2d 576 (E.D. Pa. 2009) ........................................................25

*Luther v. Countrywide Home Loans Servicing, LP*
   BC 380698 (Cal. Sup. Ct. Nov. 14, 2007) ..................................................9

*Maine State Ret. Sys. v. Countrywide Fin. Corp.,*
   No. 2:10-cv-00302, slip op. (C.D. Cal. May 5, 2011) ...................... passim

*Mass. Bricklayers & Masons Trust Funds v. Deutsche Alt-A Secs., Inc.,*
   399 B.R. 119 (E.D.N.Y. 2009) ....................................................................4

*MBIA Ins. Corp. v. Countrywide Home Loan, Inc.,*
   No. 602825/08 (Sup. Ct., N.Y. County Apr. 27, 2010) ............................30

*McAdams v. McCord,*
   584 F.3d 1111 (8th Cir. 2009) ...................................................................25

*Me. State Ret. Sys. v. Countrywide Fin. Corp.,*
   722 F. Supp. 2d 1157 (C.D. Cal. 2010) ......................................... passim

*Me. State Ret. Sys. v. Countrywide Fin. Corp.,*
   No. 10-cv-302 (C.D. Cal. Jan. 14, 2010) ...................................... passim

*Muller-Paisner v. TIAA,*
   289 F. App'x 461 (2d Cir. 2008) ..........................................................23, 24

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.,*
   2010 WL 1473288 (S.D.N.Y. Mar. 29, 2010) ......................................18, 26

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.,*
   No. 08-CV-05653-PAC, slip op. (S.D.N.Y. Dec. 15, 2010)......................12

*N.J. Carpenters Health Fund v. Residential Capital LLC*,
    272 F.R.D. 160 (S.D.N.Y. 2011) ...................................................................24

*N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC*,
    720 F. Supp. 2d 254 (S.D.N.Y. 2010).........................................................19

*Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.*,
    2003 WL 21088506 (S.D.N.Y. May 14, 2003) ...........................................21

*Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*,
    2003 WL 22052894 (S.D.N.Y. Sept. 2, 2003)............................................14

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    743 F. Supp. 2d 288 (S.D.N.Y. 2010).........................................................24

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    No. 08-cv-10783 (MGC) (S.D.N.Y. Sept. 22, 2010)...................................13

*P. Stolz Family P'Ship, L.P. v. Daum*,
    166 F. Supp. 2d 871 (S.D.N.Y. 2001).........................................................28

*P. Stolz Family Partnership L.P. v. Daum*,
    355 F.3d 92 (2d Cir. 2004)..........................................................................10

*Pacor, Inc. v. Higgins*,
    743 F.2d 984 (3d Cir. 1984)..........................................................................4

*Palmer v. Stassinos*,
    236 F.R.D. 460 (N.D. Cal. 2006).................................................................12

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998)..........................................................................24

*Pinter v. Dahl*,
    486 U.S. 622 (1988)....................................................................................27

*Powerup of Se. La., Inc. v. Powerup U.S.A., Inc.*,
    1994 WL 543631 (E.D. La. Oct. 5, 1994) ..................................................29

*Pub. Emp. Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
    714 F. Supp. 2d 475 (S.D.N.Y. 2010).............................................12, 27, 28

*Purcell Graham, Inc. v. Nat'l Bank of Detroit*,
    1994 WL 584550 (S.D.N.Y. Oct. 24, 1994)..................................................6

*Rahl v. Bande*,
    316 B.R. 127 (S.D.N.Y. 2004).......................................................................3

*Ravenswood Inv. Co., L.P. v. Bishop Cap. Corp.*,
   2005 WL 236440 (S.D.N.Y. Feb. 1, 2005)........................................................8

*Republic Bank & Trust Co. v. Bear, Stearns & Co.*,
   707 F. Supp. 2d 702 (W.D. Ky. 2010)...........................................................8

*Rombach v. Chang*,
   355 F.3d 164 (2d. Cir. 2004).........................................................................15

*RSM Prod. Corp. v. Fridman*,
   643 F. Supp. 2d 382 (S.D.N.Y. 2009)..........................................................19

*SEC v. Mozilo*,
   2010 WL 3656068 (C.D. Cal. Sept. 16, 2010) .............................................22

*Shafran v. Harley-Davidson, Inc.*,
   2008 WL 763177 (S.D.N.Y. Mar. 20, 2008) ...............................................23

*Shaw Family Archives, Ltd. v. CMG Worldwide, Inc.*,
   434 F. Supp. 2d 203 (S.D.N.Y. 2006)..........................................................29

*Shaw v. Digital Equip. Corp.*,
   82 F.3d 1194 (1st Cir. 1996).........................................................................27

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994)..........................................................................18

*SRM Global Fund L.P. v. Countrywide Fin. Corp.*,
   2010 WL 2473595 (S.D.N.Y. June 17, 2010) ..............................................17

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
   2010 WL 5559973 (C.D. Cal. Dec. 29, 2010) ...............................................4, 5, 7

*Strougo v. Brantley Capital Corp.*,
   243 F.R.D. 100 (S.D.N.Y. 2007) ....................................................................7

*Tsereteli v. Residential Asset Securitization Trust 2006-A8*,
   692 F. Supp. 2d 387 (S.D.N.Y. 2010).....................................................16, 18, 19

*United Rentals, Inc. v. Pruett*,
   296 F. Supp. 2d 220 (D. Conn. 2003)............................................................8

*Va. Bankshares, Inc. v. Sandberg*,
   501 U.S. 1083 (1991)....................................................................................18

*Vaught v. Showa Denko K.K.*,
   107 F.3d 1137 (5th Cir. 1997) ......................................................................11

*Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.*,
   774 F. Supp. 858 (S.D.N.Y. 1991) .................................................................................... 7

*Washington State Plumbing & Pipefitting Pension Trust v. Countrywide Fin. Corp.*,
   BC392571 (Cal. Sup. Ct. June 12, 2008) ......................................................................... 9

*Wyndham Assocs. v. Bintliff*,
   398 F.2d 614 (2d Cir. 1968) .............................................................................................. 6

*Young v. United States*,
   535 U.S. 43 (2002) ........................................................................................................... 10


## STATUTES

15 U.S.C. § 77d ................................................................................................................ 26

15 U.S.C. §§ 77e .............................................................................................................. 26

15 U.S.C. §§ 77k .............................................................................................................. 23

15 U.S.C. § 77m ................................................................................................................ 9

15 U.S.C. § 78u-4 ...................................................................................................... 15, 20

28 U.S.C. § 1334 ............................................................................................................... 3

28 U.S.C. § 1404 ............................................................................................................... 6

28 U.S.C. § 1452 ............................................................................................................... 3

28 U.S.C. § 2072 ............................................................................................................. 11


## OTHER AUTHORITIES

17 C.F.R. § 230.405 ........................................................................................................ 27

Fed. R. Civ P 9(b) ..................................................................................................... passim

Fed. R. Civ. P. 11(b) ....................................................................................................... 20

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 24

Fed. R. Civ. P. 12(f) ........................................................................................................ 19

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 302 ........................................... 29, 30

Rule 23 ............................................................................................................................ 11

# TABLE OF APPENDICES

**Appendix**

Countrywide Cases Pending or Recently
Resolved in the Central District of California ..............................................................A

Overlap Between Factual Allegations in this Case and Countrywide
Cases Pending or Recently Resolved in the Central District of California .....................B

The 1933 Act Statutes of Limitations and
Repose Expired Before this Action Was Filed ..............................................................C

No Tolling for Offerings Not Included in *Luther / Washington State* ...........................D

Offerings for Which the Repose Period Expired
Before the Offering Was Included in *Luther / Washington State* ...................................E

No Tolling Because No *Luther / Washington
State* Named Plaintiff Purchased in Same Offering........................................................F

Offerings for Which Repose or Limitations Periods
Expired Before a Named Plaintiff with Standing Joined *Luther / Maine State* ..............G

No Tolling Where *Luther / Washington State* Named
Plaintiffs Purchased Different Tranche than Plaintiffs Here ...........................................H

Even if Tolling Applied, the 1933 Act Claims
Related to CWALT 2006-OA2 Would Be Untimely .......................................................I

Plaintiffs Should Reasonably Have Discovered the
Alleged Untrue Statements or Omissions before January 24, 2010 ..................................J

Disclosure Regarding Cure / Replacement of Non-Complications ..................................K

Allegations Parroting Other Complaints / Investigations / News Articles ......................L

181 of the 199 Certificates Plaintiffs Allegedly Purchased
Have Made All Scheduled Principal and Interest Distributions to Date .........................M

Plaintiffs Did Not Purchase Many of Their Securities in the Offering............................N

Plaintiffs Plead That They Purchased Fewer Than
One-Third of Their Certificates Directly From a § 12 Defendant ....................................................O

The *Dexia* Complaint's Successor-Liability Claims are Based on
The Same Factual Allegations that the Central District of California
Held Inadequate to Plead a *De Facto* Merger.................................................................................. P

## TABLE OF EXHIBITS ATTACHED TO
## THE DECLARATION OF BRIAN C. DEVINE[1]

<u>Exhibit</u>

Excerpts from Prospectus Supplement for CWMBS 2005-HYB3 ...................................................1

Standard Mortgage Loan Purchase Agreement between
Countrywide Home Loans, Inc. and Aegis Mortgage Corporation ................................................2

Proof of Claim of Countrywide Home Loans, Inc.,
filed in connection with *Aegis* Bankruptcy ...................................................................................3

Second Amended Chapter 11 Plan of Aegis Mortgage Corporation ...............................................4

Excerpts from Prospectus Supplement for CWALT 2005-J14........................................................5

Excerpts from Prospectus Supplement for CWALT 2006-J1..........................................................6

Excerpts from Prospectus Supplement for CWALT 2006-OC8.......................................................7

Standard Mortgage Loan Purchase Agreement between
Countrywide Home Loans, Inc. and American Home Mortgage Corporation................................8

Proof of Claim of Countrywide Home Loans, Inc.,
filed in connection with *Am. Home Mortg. Corp.* Bankruptcy.......................................................9

Amended Chapter 11 Plan of Liquidation of *Am. Home Mortg. Corp.* Bankruptcy ....................10

Excerpts from Amended Complaint, *Fresno County Emp. Ret. Assoc. v.*
*Countrywide Fin. Corp.*, No. 11-CV-00811 (C.D. Cal. Apr. 22, 2011).......................................11

Excerpts from Amended Complaint, *State Treasurer of Mich. v.*
*Countrywide Fin. Corp.*, No. 11-CV-00809 (C.D. Cal. Apr. 22, 2011).......................................12

Excerpts from Complaint, *Stichting Pensioenfonds ABP v. Countrywide*
*Fin. Corp.*, No. 2:10-07275 (C.D. Cal.) (removed on Sept. 29, 2010).........................................13

Excerpts from Second Amended Class Action Complaint, *Me. State Ret. Sys. v.*
*Countrywide Fin. Corp.*, No. 2:10-00302 (C.D. Cal. Dec. 6, 2010)............................................14

Excerpts from Complaint, *Centaur Classic Convertible Arbitrage Fund Ltd. v.*
*Countrywide Fin. Corp.*, No. 10-CV-05699 (C.D. Cal. July 30, 2010)........................................15

---

[1]  Exhibits to the Declaration of Brian C. Devine are identified herein as "Decl. Ex."

Excerpts from Complaint, *SEC v. Mozilo*, No. 09-CV-03994 (C.D. Cal. June 24, 2009)............16

Excerpts from Complaint, *United Guar. Mortgage Indem. Co. v.
Countrywide Fin. Corp.*, No. CV-09-01888 (C.D. Cal. July 15, 2009).........................................17

Excerpts from Third Amended Class Action Complaint,
*Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide
Fin. Corp.*, No. CV-07-07097 (C.D. Cal. Dec. 3, 2008). ...........................................................18

Excerpts from Complaint, *In re Countrywide Fin. Corp. Deriv. Litig.*,
No. 2:07-cv-06923 (C.D. Cal. Feb. 15, 2008) ............................................................................19

Excerpts from Complaint, *Alvidres v. Countrywide Fin. Corp.*,
No. 07-05810-JFW (C.D. Cal. Sept. 6, 2007)..............................................................................20

Excerpts from Second Consolidated Amended Class Action Complaint,
*In re Countrywide Fin. Corp. Sec. Litig.*, No. 07-05295 (C.D. Cal. Jan. 6, 2009) ........................21

Excerpts from Complaint, *Children's Hosp. & Med. Ctr. Found. of Omaha v.
Countrywide Fin. Corp.*, No. 2:11-cv-02056 (C.D. Cal. Mar. 10, 2011) ......................................22

Excerpts from Prospectus Supplements for all
142 Public MBS Offerings at Issue in this Litigation.....................................................................23

Excerpts from Registration Statements for all
142 Public MBS Offerings at Issue in this Litigation.....................................................................24

Complaint, *Luther v. Countrywide Home Loans Servicing LP*,
No. BC380698 (Cal. Super. Ct. Nov. 14, 2007) ...........................................................................25

Class Action Complaint, *Wash. State Plumbing & Pipefitting Pension Trust v.
Countrywide Fin. Corp.*, No. BC392571 (Cal. Super. Ct. June 12, 2008) ...................................26

Amended Complaint, *Luther v. Countrywide Fin. Corp.*,
No. BC380698 (Cal. Super. Ct. Sept. 9, 2008)............................................................................27

Consolidated Complaint, *Luther v. Countrywide Fin. Corp.*,
No. BC380698 (Cal. Super. Ct. Oct. 16, 2008) ...........................................................................28

Order Re: (1) Motion to Vacate Stay; and (2) Demurrers, Issued in
*Luther v. Countrywide Fin. Corp.*, No. BC380698 (Cal. Super. Ct. Jan. 6, 2010)........................29

Complaint, *Me. State Ret. Sys. v. Countrywide Fin. Corp.*,
No. 2:10-00302 (C.D. Cal. Jan. 14, 2010) ...................................................................................30

xv

PSLRA Named Plaintiff Certifications of Vermont Pension Investment
Committee; MashreqBank, P.S.C.; Pension Trust Fund for Operating Engineers;
Operating Engineers Annuity Plan; Washington State Plumbing and
Pipefitting Pension Trust; and Maine Public Employees Retirement System
(filed on April 2, 2010 in *Me. State Ret. Sys. v. Countrywide Fin. Corp.*) ...................................31

PSLRA Named Plaintiff Certifications of Iowa Public Employees' Retirement
System; General Board of Pension and Health Benefits of the United Methodist
Church; Orange County Employees' Retirement System; and Oregon Public
Employees' Retirement System (filed on April 2 or July 13, 2010
in *Me. State Ret. Sys. v. Countrywide Fin. Corp.*) .........................................................32

Order Appointing Lead Plaintiff and Lead Counsel, *Me. State Ret. Sys. v.
Countrywide Fin. Corp.*, No. 2:10-00302 (C.D. Cal. May 14, 2010) ..............................................33

Amended Consolidated Class Action Complaint, *Me. State Ret. Sys. v.
Countrywide Fin. Corp.*, No. 2:10-00302 (C.D. Cal. July 13, 2010) .............................................34

Order of Dismissal, *Me. State Ret. Sys. v. Countrywide Fin. Corp*,
No. 2:10-00302 (C.D. Cal. Feb. 15, 2011) .................................................................35

Order Resolving Pending Motions to Dismiss, *Me. State Ret. Sys. v.
Countrywide Fin. Corp.*, No. 2:10-00302 (C.D. Cal. May 5, 2011) ...............................................36

Excerpts from Class Action Complaint, *Argent Classic Convertible Arbitrage Fund
L.P. v. Countrywide Fin. Corp.*, No. CV-07-07097 (C.D. Cal. Oct. 30, 2007) ..............................37

Complaint, *Zachary v. Countrywide Fin. Corp.*,
No. 4:08-cv-00214 (S.D. Tex. Jan. 17, 2008) ..............................................................38

February 11, 2009 *Time Magazine* Article .................................................................39

Excerpts from Transcript of Decision, *NECA-IBEW Health & Welfare Fund v.
Goldman Sachs & Co.*, No. 08-10783 (S.D.N.Y. Sept. 22, 2010) ..................................................40

Prospectus Supplement for CWABS 2007-9 ..................................................................41

Excerpts from April 2011 Distribution Reports of the Trustee for all
148 MBS Offerings and Private Placements at Issue in This Litigation .......................................42

Excerpts from March 27, 2009 Form 10-K Filed by Plaintiff TIAA-CREF ..................................43

Excerpts from Annual Report of Plaintiff Dexia SA (April 2, 2009) ...........................................44

Excerpts from Transcript of Feb. 25, 2011 Hearing Before Hon. Mariana
R. Pfaelzer in *In re Countrywide Fin. Corp. Sec. Litig.*, No. CV 07-05295 ...................................45

Decision, *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*,
No. 602825/08 (N.Y. Sup. Ct. Apr. 27, 2010) ................................................................46

Decision, *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
No. 08-CV-05653 (S.D.N.Y. Dec. 15, 2010) ................................................................47

Decision, *Kuriakose v. Fed. Home Loan Mortg. Corp.*,
No. 08-cv-07281 (S.D.N.Y. Mar. 30, 2011) ................................................................48

Decision, *In re Barclays Bank PLC Sec. Litig.*,
No. 09 Civ. 1989 (S.D.N.Y. Jan. 5, 2011) ................................................................49

Decision, *Argent Classic Convertible Arbitrage Fund L.P. v.
Countrywide Fin. Corp.*, No. CV 07-07097 (C.D. Cal. Mar. 19, 2009) ........................................50

**PRELIMINARY STATEMENT**

Plaintiffs, all sophisticated institutional investors, have sued over their purchases between 2005 and 2007 of 199 separate mortgage-backed securities ("MBS" or "Certificates") issued in 148 offerings ("Offerings") by subsidiaries of Countrywide Financial Corporation ("CFC"). Complaint ("Compl.") ¶ 4 & Ex. 1. Plaintiffs assert claims under the Securities Act of 1933 ("1933 Act") and state law. Defendants properly removed this case to federal court under "related to" bankruptcy jurisdiction, equitable considerations favor retaining jurisdiction, and this case should be dismissed. The Countrywide and Bank of America Defendants also contend that this case should be transferred to the Central District of California—where Countrywide was based, where the vast majority of Countrywide-related securities cases have been filed, and where a Countrywide MBS class action is pending from which Plaintiffs here have opted out.[2] The interests of judicial economy and convenience of the parties and witnesses strongly favor California. Regardless which court hears this case it should be dismissed, and Plaintiffs' attempt to assert against Bank of America Corporation ("BAC") the alleged liabilities of its Countrywide subsidiary also should be rejected, as virtually identical successor-liability claims have been in other cases.

_First_, Plaintiffs acknowledge that, absent tolling, the statutes of limitations and repose bar their 1933 Act claims. Although Plaintiffs argue that two earlier-filed class actions in California state court tolled the limitations periods, citing _Am. Pipe & Constr. Co. v. Utah_, 414 U.S. 538 (1974), no tolling is available because _American Pipe_ does not apply to the 1933 Act's statute of repose. In a similar case involving Countrywide MBS, Judge Castel recently held that the same two California class actions on which Plaintiffs rely did not toll the statute of repose. _See Footbridge Ltd. Trust v. Countrywide Fin. Corp_, 2011 WL 907121, at *1-2 (S.D.N.Y. Mar. 16, 2011); _accord In re Lehman Bros. Sec. & ERISA Litig._, 2011 WL 1453790, at *2 (S.D.N.Y. Apr. 13, 2011) (adopting _Footbridge_'s repose analysis). _American Pipe_ applies only to statutes of limitations, not statutes of repose, and only where the prior class action was in _federal court_. In any

_____

[2] Defendants Mozilo, Sambol, Kurland, Spector, and Sieracki join in opposing remand and in moving to dismiss the claims against them, but do not join in the motion to transfer.

event, tolling cannot apply here because the state court plaintiffs lacked standing to assert the claims that Plaintiffs belatedly assert here.

_Second_, the Offering materials represented only that the loans **either** would satisfy the stated characteristics **or**, **if they did not**, would be cured or replaced upon appropriate request.  Thus, the alleged existence of loans that did not satisfy the stated characteristics is not by itself a material misstatement.  MBS securities claims have been dismissed by both the Fifth Circuit and Judge Castel in this district for precisely this reason.  They should be dismissed here as well.

_Third_, the Complaint largely parrots unsubstantiated allegations from other suits about Countrywide's supposed loan origination practices without alleging any facts suggesting that any of the loans underlying the MBS Plaintiffs bought (the "Mortgage Loans") failed to comply with the representations in the Offering materials.  Moreover, the Offering materials disclosed detailed information sufficient to enable Plaintiffs to assess the credit risk of the loans backing each deal; this undermines any claim that Defendants misstated or concealed risks.  Furthermore, the appraisals and credit ratings Plaintiffs challenge are non-actionable opinions given the absence of any allegation these opinions were believed to be false when made.  Courts in this and other districts have dismissed MBS claims on these grounds.

_Fourth_, Rule 9(b) applies to both the fraud and 1933 Act claims, which sound in fraud.  Plaintiffs thus must plead with particularity facts giving rise to a "strong inference" each Defendant acted with intent to deceive.  Plaintiffs, however, do not allege any facts showing (1) Defendants knew that the Offering materials were (allegedly) false or misleading or (2) they personally benefitted from the alleged fraud.  The allegations about internal Countrywide emails and supposed statements from former employees are not connected to the specific mortgage loans at issue, and the inferences Plaintiffs seek to draw are negated by the disclosures in the Offering materials.  For these reasons, Judge Castel dismissed similar claims in _Footbridge_.

_Fifth_, the Offering Materials disclosed that the Certificates entitled holders only to cash distributions from the monthly principal and interest payments on the Mortgage Loans.  Over 90% of the Certificates Plaintiffs bought continue to make all required distributions.  Plaintiffs thus have

received what they bargained for.  Their attempt to create injury based upon declining market prices fails because Plaintiffs were explicitly warned that no liquid market for their MBS existed and they might not be able to resell them, much less at any given price.

*Sixth,* the Complaint alleges no facts suggesting that MBS prices dropped in response to any disclosure to the market that misstatements had been made.  Rather, on its face, the Complaint compels the inference that any alleged losses were caused by broad macroeconomic forces, including the first nationwide decline in housing prices since the Great Depression and the unprecedented collapse of the global credit markets that began in late 2007.

The purpose of the securities laws is "not to provide investors with broad insurance against market losses."  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005).  And, here, Plaintiffs are sophisticated investors who were warned about the risks that ultimately came to pass.  This suit therefore should be dismissed in its entirety.

## ARGUMENT

## I.    PLAINTIFFS' MOTION TO REMAND SHOULD BE DENIED.

### A.    Removal Was Proper Under "Related To" Bankruptcy Jurisdiction.  This action was properly removed because it is "related to" the federal bankruptcy proceedings of American Home Mortgage ("AHM") and Aegis Mortgage Corp. ("AMC").  28 U.S.C. §§ 1334, 1452.  In the Second Circuit, "related to" bankruptcy jurisdiction exists where the case "might have any *conceivable effect*' on the bankrupt estate."  *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992); *Rahl v. Bande*, 316 B.R. 127, 132-33 (S.D.N.Y. 2004).

This action will clearly affect the AHM and AMC bankruptcy estates.  Four Offerings at issue here are backed in part by loans AHM and AMC originated.[3]  AHM and AMC are contractually and automatically obligated to indemnify CHL for any losses, judgments, or costs (including legal fees) resulting from any claims—such as Plaintiffs' claims here—alleging that AHM and AMC did not represent accurately the loans' credit characteristics.  Decl. Exs. 2, 8, §§ 3.3, 3.4.

---

[3] Decl. Exs. 1, 5-7 (CWALT 2005-J14: $154 million of AHM loans; CWALT 2006-J1: $362 million, AHM; CWALT 2006-OC8: $235 million, AHM; CWMBS 2005-HYB3: $37 million, AMC).

Any Defense costs or liability incurred in connection with this case therefore will increase CHL's indemnification claims against AHM and AMC, which will increase CHL's *pro rata* share of the bankruptcy assets, which will in turn reduce the assets available for distribution to other creditors. Courts have repeatedly upheld "related to" bankruptcy jurisdiction in these exact circumstances, including in a recent case involving *Countrywide MBS backed by loans originated by AHM*.[4]

Plaintiffs argue that CHL's indemnification claims are "potential" and "contingent," and that CHL must bring a separate lawsuit against AHM and AMC first.  Mot. at 9, 13-16.  Not so. The cases Plaintiffs cite involve common law claims for contribution, which require a separate suit establishing the right to indemnification.[5]  Here, however, CHL's rights are contractual—hence *automatic* and *unconditional*.  "The [indemnification] agreement makes clear that [AHM's] obligation to defend CHL arose *immediately* upon the filing of this lawsuit.  There is therefore no merit to Plaintiff's argument that yet another separate lawsuit would have to proceed … before the bankruptcy case would be impacted."  *ABP*, 2010 WL 5559973, at *4.[6]

Plaintiffs also argue that, in light of the confirmation of the AHM and AMC bankruptcy plans, jurisdiction only exists if "there is a close nexus to the bankruptcy plan or proceeding." Mot. at 10.  But the "close nexus" test does not apply here because AHM and AMC are *liquidating* and not reorganizing.[7]  Decl. Exs. 4 & 10 (liquidating plans).  Unlike a reorganized debtor that emerges from bankruptcy upon confirmation, a liquidating debtor's "sole purpose is to wind up its affairs, convert its assets to cash, and pay creditors."[8]  Because "[a]ny litigation involving such a debtor thus relates much more directly to a [bankruptcy] proceeding," the broad "compass of re-

---

[4] *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 2010 WL 5559973, at *4 (C.D. Cal. Dec. 29, 2010) ("*ABP*"); *accord City of Ann Arbor Emp. Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.*, 572 F. Supp. 2d 314, 317-19 (E.D.N.Y. 2008); *Mass. Bricklayers & Masons Trust Funds v. Deutsche Alt-A Secs., Inc.*, 399 B.R. 119, 123 (E.D.N.Y. 2009); *Lone Star Fund V (U.S.) v. Barclays Bank PLC*, 594 F.3d 383, 386-87 (5th Cir. 2010).

[5] *E.g.*, *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002).

[6] *Accord Pacor, Inc. v. Higgins*, 743 F.2d 984, 995-96 (3d Cir. 1984) (indemnification agreements "give rise to . . . *automatic liability* on the part of the estate"); *Lone Star*, 594 F.3d at 387 (same).

[7] *E.g.*, *In re Boston Reg'l Med. Ctr., Inc.*, 410 F.3d 100, 106-07 (1st Cir. 2005); *In re Refco, Inc. Sec. Litig.*, 628 F. Supp. 2d 432, 442 (S.D.N.Y. 2008); *In re Cross Media Mktg. Corp.*, 367 B.R. 435, 444 (Bankr. S.D.N.Y. 2008); *In re DPH Holdings Corp.*, 437 B.R. 88, 97-98 (S.D.N.Y. 2010).

[8] *Boston Reg'l Med. Ctr.*, 410 F.3d at 106-07.

lated to jurisdiction persists undiminished after plan confirmation." *Boston Reg'l Med. Ctr.*, 410 F.3d at 107.

Even if the "close nexus" test did apply, it would be satisfied here.  As Plaintiffs concede, a "close nexus" exists if the related litigation "affect[s] the interpretation, implementation, consummation, execution, or administration of the confirmed plan."  Mot. at 10; *In re Resorts Int'l, Inc.*, 372 F.3d 154, 166-67 (3d Cir. 2004).  Because CHL's indemnification claim will directly impact CHL's *pro rata* share and the assets available for other creditors, it clearly affects the plans' "implementation," "execution," and "administration."  *See ABP,* 2010 WL 5559973, at *5 (finding "close nexus" because of AHM's contractual indemnification obligation to CHL).[9]

**B.     The Equitable Considerations Weigh Against Remand**.  Here, as in *ABP*, *id.* at *6-7, all seven equitable remand factors[10] weigh against remand here:  Factors 1 and 5—This action's potential impact on the bankruptcy estates is significant.  Roughly *$788 million* of loans originated by AHM and AMC underlie the MBS at issue, and, thus, the potential indemnification claim could total millions of dollars.  *Supra*, n.2.  Factors 2, 3, 4—Like *ABP,* this is an opt-out action stemming from *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, No. 10-cv-302 (C.D. Cal. Jan. 14, 2010) ("*Maine State*"), a *federal* class action asserting *federal* claims under the 1933 Act.  Because Plaintiffs here assert virtually identical 1933 Act claims, issues of federal law predominate.  *ABP*, 2010 WL 5559973, at *7 ("this is a federal securities action at its core").  Plaintiffs' inclusion of state law claims does not change this, as "there are no unsettled or difficult issues of state law that weigh in favor of remand."  *Id*.  Nor does comity require remand—rather, there is a strong federal interest in coordinating all *Maine State* opt-out cases in federal court.  Factor 6—

---

[9] Plaintiffs' argument that CHL is not entitled to indemnification from AHM or AMC if it is found liable for fraud (Mot. at 17) is incorrect.  CHL's indemnification would be for misrepresentations *by AHM and AMC* as to loans *they* originated (and sold to CHL), not for statements by CHL about loans it originated.

[10] *See Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 407 (S.D.N.Y. 1991) ((1) the action's effect on the efficient administration of the bankruptcy estate; (2) the extent to which state law issues predominate; (3) the difficult or unsettled nature of applicable state law; (4) comity; (5) the relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; (7) prejudice to involuntarily removed defendants).

Defendants do *not* seek to move this case to bankruptcy court or interfere with any jury trial rights. *Id*. Factor 7—No *defendants* were "involuntarily removed to federal court" (all joined in removal), and this factor favors retention (contrary to what Plaintiffs contend, this factor does not address prejudice to *Plaintiffs*, Mot. at 25). *Drexel*, 130 B.R. at 407. In any event, the fact "[t]hat [plaintiffs] will not litigate their claims in their chosen forum does not constitute legal prejudice." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 2008 WL 4449508, at *5 (N.D. Tex. Sept. 30, 2008).

## II.    THIS CASE SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT.

This case belongs in the Central District of California, where twelve securities cases have been filed against Countrywide and related defendants. *See* App. A. Plaintiffs filed in New York only after Judge Pfaelzer ruled in the Countrywide MBS class action from which these Plaintiffs have opted out that 1933 Act claims as to most of their MBS are time-barred. *See Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1165 (C.D. Cal. 2010). Transfer will prevent such forum-shopping and also "promot[e] convenience and justice." *Cartier v. D & D Jewelry Imports*, 510 F. Supp. 2d 344, 345-46 (S.D.N.Y. 2007).[11]

*First*, judicial economy and efficiency strongly favor California. The pendency of related litigation in another district overrides all other factors in deciding whether to transfer an action under 28 U.S.C. § 1404(a). *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968).[12] There is a "strong policy favoring the litigation of related claims in the same tribunal" because it allows for pre-trial discovery to proceed more efficiently, avoids duplicative litigation, and prevents inconsistent adjudications. *Id.* Indeed, courts routinely grant motions to transfer based on such pol-

---

[11] Given its ties to the Central District, Plaintiffs do not dispute this case could have been filed there. In this regard, the Declaration of Paul T. Liu, dated May 13, 2011 ("Liu Decl.") at ¶¶ 5-11 describes the facts that make the Central District the center of gravity for this litigation and why venue is proper there.

[12] *Accord Goggins v. Alliance Capital Mgmt., L.P.,* 279 F. Supp. 2d 228, 234 (S.D.N.Y. 2003); *Berman v. Informix Corp.,* 30 F. Supp. 2d 653, 660 (S.D.N.Y. 1998); *Purcell Graham, Inc. v. Nat'l Bank of Detroit,* 1994 WL 584550, at *6 (S.D.N.Y. Oct. 24, 1994).

icy considerations[13]—especially where, as here, the litigation in the transferee forum "alleges the same misrepresentation in public filings." *Goggins*, 279 F. Supp. 2d at 234.

Here, Plaintiffs admit that their claims are *identical* to those in *Maine State*, a Countrywide MBS class action in which they are class members and through this case effectively have opted out. *See* Compl. ¶ 261. Their claims are also identical to the claims in *ABP*, a Central District case filed by an MBS purchaser that opted out of *Maine State*.[14] Specifically, the allegations at the core of Plaintiffs' complaint—including Countrywide's alleged "systemic disregard" of underwriting standards, alleged failure to evaluate borrowers' ability to repay loans, and use of allegedly inflated appraisals—essentially repeat verbatim the allegations made in the *Maine State* and *ABP* actions, in which Judge Pfaelzer is already addressing identical claims relating to over $356 billion in original notional amount of Countrywide MBS offerings. *See* App. B. Most of the Offerings as to which Plaintiffs here assert claims—123 out of 148—overlap with those at issue in *Maine State* and *ABP*. Countrywide will, therefore, seek to relate this case to *Maine State* and *ABP* if transfer is allowed.[15] The other ten Countrywide-related cases pending in the Central District—eight of which are before Judge Pfaelzer—likewise involve allegations that Countrywide misrepresented its lending practices and abandoned its underwriting guidelines. *See* App. A.

<u>Second</u>, the convenience of the parties and witnesses strongly favors California. "Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district." *Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.,* 774 F. Supp. 858, 868 (S.D.N.Y. 1991). The "core determination" is "the center of gravity of the litigation." *Amick v. Am. Express Travel Related Servs. Co.*, 2010 WL 307579, at *1 (S.D.N.Y. Jan. 26, 2011). Here:

---

[13]   *See, e.g., Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 108 (S.D.N.Y. 2007); *Langley Partners, L.P., v. Tripath Tech., Inc.*, 2005 WL 2482527, at *2 (S.D.N.Y. Oct. 6, 2005); *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 49 F. Supp. 2d 664, 669-71 (S.D.N.Y. 1999).

[14] The claims against BAC and NB Holdings, Inc. ("NB") are likewise substantially identical to the successor liability claims in *ABP* and *Maine State* and therefore support transfer. *See* App. P.

[15] No discovery has taken place in *Maine State* or *ABP*. Should *ABP* survive a motion to dismiss and proceed to discovery with *Maine State*, many of the same documents will be requested and produced in both cases, and many of the same people will need to be deposed, and Countrywide anticipates that Judge Pfaelzer will coordinate discovery in these actions.

- Countrywide's business activities relevant to this case—the origination and credit underwriting of the Mortgage Loans, quality control review of the Mortgage Loans, structuring and underwriting of the MBS, and due diligence on the Mortgage Loan pools—all occurred in the Central District.  (Liu Decl. ¶ 8.)

- All of the Countrywide Defendants have (or had) their principal places of business there; and all of the current and former Countrywide officers and directors named as defendants work (or worked), and reside in, or near, there.  (Liu Decl. ¶ 7; Compl. ¶¶ 18-26, 29-30, 251-59.)

- Most of the potentially relevant witnesses work (or worked) in, and reside in or near, the Central District of California.  (Liu Decl. ¶ 10.)  Many are no longer employed by Countrywide so their attendance at trial could not be assured absent transfer.[16]

- Virtually all of the relevant documents are located in the Central District of California where Countrywide stores both paper and electronic documents.  (Liu Decl. ¶ 11.)[17]

- The loans backing Plaintiffs' MBS—the subject of the underwriting guideline allegations (*see* Compl. ¶¶ 57-121)—were originated in the Central District of California by CHL.[18]

- The Offering documents for Plaintiffs' MBS – the source of any alleged misrepresentations about the riskiness and credit quality of the underlying loans (*see* Compl. ¶¶ 171-94)—were prepared in the Central District of California.  (Liu Decl. ¶ 9.)[19]

In short, the central issues in this case are most closely connected to California.  Plaintiffs cannot show a meaningful connection to the Southern District of New York.  Transfer is warranted.[20]

## III.   **PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY.**

A.   **Plaintiffs' 1933 Act Claims Are Time Barred**.  Under § 13 of the 1933 Act, Plaintiffs were required to assert their 1933 Act claims "within *one year* after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of

---

[16] Courts have transferred cases where they lacked subpoena power over witnesses.  *E.g.*, *Amick*, 2010 WL 307579, at *3; *United Rentals, Inc. v. Pruett*, 296 F. Supp. 2d 220, 229 (D. Conn. 2003).

[17] Courts have transferred cases where the majority of relevant documents are located far from the venue.  *See, e.g.*, *Amick*, 2010 WL 307579, at *3; *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 403-04 (S.D.N.Y. 1998); *Berman*, 30 F. Supp. 2d at 658.

[18] Where, as here, a plaintiff claims systemic wrongdoing by a corporate defendant, the locus of operative facts is typically deemed to be the company's headquarters.  *See, e.g.*, *Butcher v. Gerber Prods. Co.*, 1998 WL 437150, at *8 (S.D.N.Y. Aug. 3, 1998); *Jones v. Walgreen Co.*, 463 F. Supp. 2d 267, 277-78 (D. Conn. 2006).

[19] For purposes of a transfer motion, misrepresentations "occur" in the district where they are issued, not the district where they are received.  *See, e.g.*, *See, e.g.*, *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 397 (S.D.N.Y. 2006); *Adair v. Microfield Graphics, Inc.*, 2000 WL 1716340, at *2 (S.D.N.Y. Nov. 16, 2000); *Nematron*, 30 F. Supp. 2d at 404.

[20] A plaintiff's choice of forum will be disregarded where, as here, the operative facts of the case have little or no connection to the district, even if the plaintiff resides in that district.  *See Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373-77 (S.D.N.Y. 2006); *Ravenswood Inv. Co., L.P. v. Bishop Cap. Corp.*, 2005 WL 236440, at *7 (S.D.N.Y. Feb. 1, 2005).  That is all the more true where, as here, the suit is a result of forum-shopping.  *See Alexander v. Franklin Res., Inc.*, 2007 WL 518859, at *4 (N. D. Cal. Feb. 14, 2007).

reasonable diligence," *and* "*[i]n no event* . . . more than *three years* after the security was bona fide offered to the public [for § 11 claims], or . . . the sale [for § 12(a)(2) claims]."  15 U.S.C. § 77m.  Here, both the one-year limitations period and three-year repose period expired before Plaintiffs filed this action on January 24, 2011.

          **1.**      **Absent Tolling, All Time Periods Have Expired.**  Statute of Repose:  All 148 MBS Offerings at issue were "bona fide offered to the public" before January 24, 2008—*i.e.*, more than three years before the Complaint was filed.[21]  For MBS Offerings pursuant to shelf registration statements filed before December 1, 2005, the relevant date is "the effective date of the registration statement."  *Finkel v. Stratton Corp.*, 962 F.2d 169, 173 (2d Cir. 1992).  For Offerings pursuant to shelf registration statements filed after December 1, 2005, the relevant date is the date of the prospectus supplement for issuers and underwriters, but remains the date of the registration statement for officers and directors.  *See Maine State*, 722 F. Supp. 2d at 1165 & n.8.  Here, both sets of dates yield the same result:  for all 148 Offerings, the relevant shelf registration statements and prospectus supplements were dated before January 24, 2008.  App. C.  Similarly, according to Ex. 1 to the Complaint, all of Plaintiffs' purchases also occurred before January 24, 2008.  *Id.*  Thus, the three-year repose period expired as to all Offerings for purposes of both §§ 11 and 12(a)(2) before this action was filed.

     Statute of Limitations:  The one-year statute of limitations also has expired as to all 148 Offerings, because Plaintiffs discovered (or should have discovered by the exercise of reasonable diligence) the alleged untrue statements prior to January 24, 2010—more than one year before the Complaint was filed.  Plaintiffs here were members of the proposed classes in *Luther v. Countrywide Home Loans Servicing, LP*, BC 380698 (Cal. Sup. Ct. Nov. 14, 2007), and *Washington State Plumbing & Pipefitting Pension Trust v. Countrywide Fin. Corp.*, BC392571 (Cal. Sup. Ct. June

---

[21] It is unclear from the Complaint whether Plaintiffs are asserting 1933 Act claims concerning the eight private placements in which they purchased.  If Plaintiffs are asserting such claims, not only are they time-barred, but they are also subject to dismissal because such offerings cannot give rise to liability under §§ 11 or 12(a)(2).  *See Gustafson v. Alloyd Co.,* 513 U.S. 561, 584 (1995); *DeMaria v. Andersen*, 318 F.3d 170, 177 (2d Cir. 2003).

12, 2008), two putative state court class actions asserting nearly identical 1933 Act claims involving Countrywide MBS.  Compl. ¶¶ 262-63.  As Judge Pfaelzer held in *Maine State*, "[t]he filing of the *Luther* complaint . . . establishes that Plaintiffs discovered the basis of their CWALT claims before November 14, 2007," and "[t]he filing of the *Washington State* complaint . . . establishes [that] Plaintiffs discovered the basis of all of their claims before June 12, 2008."  722 F. Supp. 2d at 1165.  Moreover, the Complaint alleges a variety of publicly available facts from 2007, 2008, and 2009—including increased defaults, rating downgrades, government investigations, an SEC enforcement action, private suits, and press reports—that clearly put Plaintiffs on notice of their 1933 Act claims long before January 24, 2010.  App. J.

        **2.**      **Class Action Tolling Does Not Apply.**  Acknowledging that their 1933 Act claims are otherwise stale, Plaintiffs allege that the limitations and repose periods were tolled by the filing of the *Luther* and *Washington State* class actions, pursuant to the federal class action tolling doctrine of *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974).  Compl. ¶¶ 261-73.  That argument has been rejected by courts within this District.  First, as Judges Castel and Kaplan recently ruled, "the class action tolling rule of [*American Pipe*] has no application to the 1933 Act's statute of repose."  *Footbridge Ltd. Trust v. Countrywide Fin. Corp*, 2011 WL 907121, at *1, 3-7; *In re Lehman Bros. Sec. & ERISA Litig.*, 2011 WL 1453790, at *2-3 (S.D.N.Y. Apr. 13, 2011).  "[T]he plain language of section 13"—which provides that "*in no event*" shall an action be brought more than three years after the offering or sale—"is absolute."  *Footbridge*, 2011 WL 907121, at *5.  *American Pipe* held only that a class action tolls the *statute of limitations*.  *See* 414 U.S. at 551.  Although statutes of limitations are subject to judicially-created or "equitable" tolling because they merely "bear on the availability of remedies,"[22] such tolling is "fundamentally inconsistent" with the statute of repose because it defines an "outside limit" on the underlying right in Sections 11 and 12.[23]  "[P]ursuant to the Rules Enabling Act," 28 U.S.C. § 2072(b), judicially-

---

[22] *P. Stolz Family Partnership L.P. v. Daum*, 355 F.3d 92, 102 (2d Cir.2004).
[23] *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991); *see also P. Stolz*, 355 F.3d at 102; *Young v. United States*, 535 U.S. 43, 49 (2002) (citing *American Pipe* as

created tolling based on Rule 23 "could not trump a statutory enactment" of a fixed repose period. *Footbridge*, 2011 WL 907121 at *6; *accord Lehman*, 2011 WL 1453790 at *3.  Because the three-year repose period has expired for all 148 Offerings, Plaintiffs' 1933 Act claims are time-barred.

Second, *American Pipe* tolling does not apply to class actions filed in state court.  To the contrary, *American Pipe* tolling is rooted in "the provisions of Federal Rule of Civil Procedure 23 regulating class actions *in the federal courts*."  414 U.S. at 540.  It was designed to protect "the efficiency and economy of litigation" brought under Rule 23, by eliminating the need for absent class members to clog the federal courts with "needless" and "duplicati[ve]" protective filings.  *Id*. at 554.  Thus, *American Pipe* merely interpreted *federal* Rule 23 to permit tolling in *federal* class actions to help manage the docket of the *federal* courts.[24]  Here, because *Luther* and *Washington State* were filed in California *state* court, *American Pipe* is inapplicable.[25]

Third, even if *American Pipe* tolling did apply, 25 of the 148 Offerings at issue were *not* at issue in *Luther* or *Washington State*.  App. D.  *American Pipe* tolling thus cannot apply to those Offerings:  "where the claims in the proposed class action did not relate to the same transactions or the same alleged misleading statements challenged in the subsequent suit, courts have refused to apply the doctrine."  *In re Enron Corp. Sec.*, 465 F. Supp. 2d 687, 718 (S.D. Tex. 2006).

Fourth, with respect to 22 additional Offerings that were at issue in *Luther/Washington State*, the three-year repose period expired for Section 11 purposes *before* they were included in any *Luther/Washington State* complaint (for two of the 22, it also expired for Section 12 purposes).

---

example of "equitable tolling"); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 n.3 (1990) (same); *Hunsaker v. Hurwitz*, 14 F. App'x 826, 829 (9th Cir. 2001) (same).

[24] *E.g.*, *In re Copper Antitrust Litig.*, 436 F.3d 782, 793-94 (7th Cir. 2006) ("[n]ot only is there no suggestion in *American Pipe* . . . that [it] ha[s] any direct application to parallel state procedures, but the policies underlying *American Pipe* . . . simply do not apply in the cross-jurisdictional context"); *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1144 (5th Cir. 1997) ("*American Pipe* ... involved the tolling effect of putative *federal* class actions"); *In re Fosamax Prods. Liab. Litig.*, 694 F. Supp. 2d 253, 257 (S.D.N.Y. 2010) (*American Pipe* "does not address whether a class action filed in *state* court tolls the limitations period of an action filed in another jurisdiction") (emphasis added).

[25] In *Maine State*, Judge Pfaelzer concluded that *American Pipe* may apply to state court class actions, but did not explain the rationale for her conclusion or how it is consistent with the Rule 23 policies underlying the tolling rule.  *See* 722 F. Supp. 2d at 1166.

App. E.  As such, claims related to these Offerings were time-barred before any *American Pipe* tolling could have possibly begun.  *See Maine State*, 722 F. Supp. 2d at 1165-67.

Fifth, of the remaining Offerings, all but 12 are not entitled to *American Pipe* tolling because no named plaintiff in *Luther/Washington State* had standing to pursue those claims in the prior class actions.  As numerous courts have held, "if the original plaintiffs lacked standing to bring their claims in the first place, the filing of a class action complaint does not toll the statute of limitations for other members of the purported class."  *In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 82 (D. Conn. 1994).[26]  In *Maine State*, Judge Pfaelzer confronted the *exact same facts* presented here—the same parties (Plaintiffs here were putative class members), the same claims, the same prior class actions, and the same MBS—and held that any tolling "applies only to securities where the named plaintiffs [in *Luther/Washington State*] had actual standing to bring the lawsuit."  722 F. Supp. 2d at 1166-67.[27]  Thus, because the *Luther/Washington State* named plaintiffs purchased MBS in only 12 of the remaining Offerings at issue here, App. F, they lacked standing to assert claims as to the other Offerings, and the limitations and repose periods for such claims were not tolled by the filing of those putative class actions.[28]

Sixth, of the 12 Offerings purchased by a named plaintiff in *Luther/Washington State*, the Section 11 claims (and certain Section 12 claims) related to five Offerings are time-barred because

---

[26] *Accord N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08-CV-05653-PAC, slip op. at 4 (S.D.N.Y. Dec. 15, 2010) (Decl. Ex. 47); *In re Wells Fargo Mortgage-Backed Cert. Litig.*, 2010 WL 4117477, at *6 (N.D. Cal. Oct. 19, 2010); *Boilermakers Nat'l Annuity Trust Fund v. WaMu Mortg. Pass Through Cert.*, 748 F. Supp. 2d 1246, 1259 (W.D. Wash. 2010); *Pub. Emp. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 481 (S.D.N.Y. 2010).

[27] There are two principal reasons for this rule.  First, given the "case or controversy" requirement of Article III, "it would be beyond the constitutional power of a federal court to toll a period of limitations based on a claim that failed because the claimant had no power to bring it."  *Palmer v. Stassinos*, 236 F.R.D. 460, 465 n.3 (N.D. Cal. 2006).  Second, if tolling applied despite the named plaintiff's lack of standing, "this would clearly encourage attempts to circumvent the statute of limitation by filing a lawsuit without an appropriate plaintiff and then searching for one who can later intervene with the benefit of the tolling rule."  *N.J. Carpenters Health Fund*, at 4 n.1.

[28] This purchase information is from certifications filed by the *Luther* named plaintiffs in *Maine State*.  The Complaint, however, merely alleges that those named plaintiffs purchased in only *two* of the same Offerings as Plaintiffs here—and one of those two (CWL 2006-3) is not actually included in Plaintiffs' list of purchases.  Compl. ¶ 268, Ex. 1.  These allegations are plainly insufficient to support tolling, and should be rejected for that reason alone.

the repose period expired before the named plaintiff with standing joined the putative class action. App. G.  These claims were untimely before any potential tolling could have begun.

*Seventh*, of the remaining Offerings purchased by a *Luther/Washington State* named plaintiff, 1933 Act claims as to all but three Offerings are not eligible for tolling because Plaintiffs did not purchase the same MBS *tranche* within those Offerings as the corresponding named plaintiff in *Luther/Washington State*.  Because each MBS tranche is a separate security represented by a separate Certificate, "the statute of limitations was tolled during the pendency of the *Luther* cases only with respect to the *Certificates* [*i.e.*, tranches] that the named plaintiffs purchased in those cases." *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-cv-00302, slip op. (C.D. Cal. May 5, 2011) (Decl. Ex. 36), at 4; *accord NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, No. 08-cv-10783 (MGC) (S.D.N.Y. Sept. 22, 2010) (Decl. Ex. at 40), at 7-8, 57.  For all others not purchased by the *Luther/ Washington State* named plaintiffs, "the relevant limitations period continued to run with respect to those tranches." *Id*. at 12.  For these three Offerings, Plaintiffs allege that they purchased a *different* tranche than the tranche(s) purchased by the *Luther/Washington State* plaintiffs.  App. H.  As such, no tolling applies for those purchases.

*Finally*, Plaintiffs' claims as to CWALT 2006-OA2 (an Offering in which both the *Luther/Washington State* named plaintiffs and Plaintiffs here purchased the same tranche) are also time-barred.  As illustrated in App. I, the three-year repose period expired before this action was filed, despite intermittent tolling based on *Washington State* and *Maine State*.  In short, even if the Court were to find *American Pipe* applicable—which it is not—Plaintiffs' 1933 Act claims as to all but two MBS tranches would nevertheless be time-barred.

    **B.**    **Count VIII Is Preempted By The Martin Act.**  The negligent misrepresentation claim is preempted by the Martin Act, which "gives the New York Attorney General the exclusive authority to enforce its provisions." *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 431-34 (S.D.N.Y. 2010).  Although the New York Court of Appeals has not addressed this issue, the Second Circuit has held that common law "causes of action related to a plaintiff's securities fraud claim that do not include scienter as an essential element are typically preempted by the Martin

13

Act." *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 421 (S.D.N.Y. 2007); *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 190 (2d Cir. 2001).[29]

### C.   No Material Misstatement Or Omissions Are Alleged.

**1.   Any Representations Made Were Limited And Qualified.**   Plaintiffs' claims all rest on the mistaken premise that the Offering documents contained unqualified representations that each of the Mortgage Loans underlying each Offering complied with all applicable underwriting guidelines.  *See* Compl. ¶¶ 173-92.  To the contrary, the prospectus supplements represented only that, if there were an "uncured breach of any representation or warranty relating to the characteristics of the [M]ortgage [L]oans that materially and adversely affects the interests of the certificateholders in that [M]ortgage [L]oan," the seller of the Mortgage Loan "will be obligated to repurchase or substitute a similar mortgage loan."  *See* App. K.  In other words, the Offering documents represented only that the loans *either* (1) would have characteristics complying with the underwriting guidelines *or, if they did not have such characteristics as of the Offering date*, (2) they would be cured or repurchased upon proper request.

Judge Castel has interpreted Countrywide's MBS offering materials in precisely this way: "When read in context, the offering documents covenant that there ought not be any Mortgage Loans in default at the time of the Securitizations, but acknowledge the possibility that there may be delinquent loans and, in that event, Countrywide would cure the delinquent loan in one manner or another."  *Footbridge Ltd. v. Countrywide Home Loans, Inc.*, 2010 WL 3790810, at *16 (S.D.N.Y. Sept. 28, 2010).  The Fifth Circuit in *Lone Star* interpreted similar offering document language the same way, holding that those materials were not false and misleading where the trusts contained a large number of delinquent loans even though the prospectuses represented that the loans would be non-delinquent.  594 F.3d at 386.  "Read as a whole," the Court held, "the prospectuses and warranties provide that the mortgages *should be* non-delinquent, but *if* some mortgages

---

[29] *Accord Beacon Assocs.*, 745 F. Supp. 2d at 431-32; *Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*, 2003 WL 22052894, at *3 (S.D.N.Y. Sept. 2, 2003) ("The federal district courts that have examined the question have reached the same result with near unanimity").

were delinquent then [the seller] would *either* repurchase them *or* substitute performing mortgages into the trusts." *Id.* at 389.  Because the plaintiffs did not allege a failure to substitute or repurchase delinquent mortgages, they failed to plead a misrepresentation. *Id.*  Likewise here, the "repurchase or substitute" provisions in the Offering documents for each of the MBS make clear that there was no absolute representation that each loan would possess the stated attributes, but indicate instead that the parties anticipated the possibility that some loans might not comply.  Because Plaintiffs have not identified a single misrepresented Mortgage Loan and have not alleged that cure or replacement was ever requested (much less refused), they have not alleged a misrepresentation.

     **2.**    **The Complaint Fails To Plead Fraud With Particularity.**  A complaint's allegations must state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).  "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 191 (2d Cir. 2011).  Plaintiffs' fraud, fraudulent inducement, aiding and abetting, and negligent misrepresentation claims (Compl. ¶¶ 212-36; 319-33) also must satisfy the heightened pleading requirements of Rule 9(b). *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007).  The same is true for Plaintiffs' 1933 Act claims because those claims "are premised on allegations of fraud." *Rombach v. Chang*, 355 F.3d 164, 171 (2d. Cir. 2004).  Here, despite boilerplate disclaimers (Compl. ¶¶ 3, 245, 293, 306), the fraud and non-fraud claims are founded on the exact same allegations. *Compare* Compl. ¶¶ 177, 187, 191 (fraud) *with* ¶¶ 280, 285, 289 (1933 Act).[30]

     To satisfy Rule 9(b), Plaintiffs must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1); *In re Axis Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 584 (S.D.N.Y. 2006).  The Complaint pleads no facts show-

---

[30] The Second Circuit has rejected boilerplate disclaimer language similar to Plaintiffs', noting that Rule 9(b) "is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." *Rombach*, 355 F.3d at 171.

ing that any representation in the Offering documents was false *when made*.  Rather, Plaintiffs rely on rank speculation—lifting allegations from complaints in other actions without any investigation of their reliability, making broad assertions about the mortgage industry as a whole, and conclusorily asserting that the opposite of what the Offering documents said was true.  *E.g.*, Compl. ¶¶ 9, 54-56, 67, 107-08, 114-18, 127-30, 177.  Plaintiffs' allegations about current delinquency rates of the Mortgage Loans or downgrades in MBS ratings (Compl. ¶¶ 10, 196), *years* after the Offerings, also fail to show that any statements were knowingly false *when made*, but rather amount to impermissible fraud by hindsight.  *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978) (fraud cannot be pled by hindsight).  The Complaint, therefore, comes nowhere close to satisfying Rule 9(b).

### 3.  No Alleged Misrepresentation Has Been Shown To Be Material.

#### a.   *No Misstatement Has Been Tied To Any Of The Pooled Loans*.

Plaintiffs acknowledge that the representations in each Offering document referred only to the specific Mortgage Loans underlying the particular deals at issue.[31]  Thus, to show that the Offering documents "contained an untrue statement of material fact," Plaintiffs must plead that the practices alleged in the Complaint applied to the *specific* Mortgage Loans underlying the *specific* MBS they purchased.[32]  In *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 692 F. Supp. 2d 387, 394 (S.D.N.Y. 2010), plaintiffs' appraisal allegations were insufficient because they did not "even remotely support the allegation that *the loans in the pool underlying the Certificates [purchased by plaintiffs]* were made on the basis of appraisals that did not conform to USPAP."  Similarly, the *Footbridge* court held that allegations that Countrywide "abandoned" its underwriting guidelines failed because "plaintiffs do not tie the general allegations that Countrywide granted 'abundant' exceptions under its underwriting guidelines to the Securitizations."  2010 WL 3790810, at *12-

---

[31] "The Prospectus Supplements filed with the SEC contained detailed descriptions *of the mortgage pools underlying the Certificates*.  The respective Prospectus Supplements provided *the specific terms of the particular Certificate offering*."  Compl. ¶ 159 (emphasis added).

[32] Likewise, Plaintiffs' non-securities claims all require allegations that Plaintiffs actually relied on a misstatement related to its purchase of the Certificates, and thus the specific pool of Mortgage Loans underlying the Certificates.  *See, e.g.*, *Footbridge*, 2010 WL 3790810, at *25 (dismissing misrepresentation claims for failure to tie allegations to the specific MBS at issue).

13.  Allegations of inflated appraisals were also dismissed because the complaint did not "link this allegation to the Securitizations at issue." *Id*.

Plaintiffs here likewise do not link their allegations regarding underwriting, exceptions, borrower documentation, and appraisal practices to any specific Mortgage Loan underlying the MBS they bought.  Rather, Plaintiffs rely on generalized allegations of supposedly "systematic" conduct within Countrywide (*e.g.*, Compl. ¶ 177), alleged practices in the mortgage lending industry (*id*. ¶¶ 126-30; 139-42), and alleged "investigations" of loans performed by other plaintiffs in other cases (*id*. ¶¶ 67, 104, 131, 199-203).  Plaintiffs have not pleaded any facts showing that any Mortgage Loan underlying the MBS *in this case* was originated improperly, much less that the description in the Offering documents at issue was materially false.

        **b.**     ***Mortgage Loan Characteristics Were Disclosed In Detail.***  "[I]t is indisputable that there can be no omission where the allegedly omitted facts are disclosed." *SRM Global Fund L.P. v.  Countrywide Fin. Corp.*, 2010 WL 2473595, at *8 (S.D.N.Y. June 17, 2010).  Plaintiffs' conclusory allegations that Countrywide misrepresented its underwriting standards (Compl. ¶¶ 169, 172-77) are belied by the granular information provided in the Offering documents regarding the credit risk attributes of the Mortgage Loans.  Indeed, Plaintiffs admit that the Offering documents provided "detailed descriptions of the mortgage pools underlying the Certificates." *Id*. ¶ 159.  Plaintiffs also acknowledge that their investment managers used this detailed information to analyze the "credit characteristics of the mortgage loan pool." *Id*. ¶ 166.[33]  Plaintiffs were provided all the information needed to assess the credit risk associated with the pooled loans and the likelihood of continued cash flow distributions in the future.  Thus, any alleged errors in the descriptions of Countrywide's underwriting practices, when appropriately viewed in the

---

[33] Plaintiffs argue that certain metrics provided by Countrywide were "untrue" because Countrywide and other originators "allowed applicants for 'stated income' loans to provide untrue income information and did not verify the applicants' purported income." Compl. ¶ 169.  But Plaintiffs admit that they were told the precise number of reduced documentation loans underlying their MBS (*see id*. ¶ 97), and the prospectus supplements also expressly disclosed that under Countrywide's reduced documentation loan programs "underwriting documentation concerning income, employment and asset verification is waived."  *See* Decl. Ex. 41 (CWABS 2007-9 Pro. Supp.) at S-44..

context of this loan data, are immaterial as a matter of law.  For this reason, the court in *Republic Bank & Trust Co. v. Bear, Stearns & Co.*, rejected a claim that defendants had failed to warn that loans underlying the MBS had been originated in disregard of underwriting standards, noting "plaintiff could have and should have inspected [the offering materials] to learn exactly what it was buying."  707 F. Supp. 2d 702, 711 (W.D. Ky. 2010).

> c.   ***Appraisals And Ratings Are Non-Actionable Opinions***.  Plaintiffs

allege that the Offering documents contained misstatements relating to appraisal standards and in-dependence, statements derivative of appraisals (loan-to-value ratios), and the ratings assigned to MBS by credit rating agencies.[34]  Appraisals and ratings, however, are nonactionable statements of opinion absent allegations that the opinion was believed to be false when made.  *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1090 (1991); *accord Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1131 (2d Cir. 1994).  Accordingly, courts have repeatedly dismissed MBS claims based on allegedly incorrect or inflated appraisals where, as here, plaintiffs did not allege that appraisers knew the appraisals were inaccurate when they were prepared.  As district Judge Wexler recently held in dismissing 1933 Act claims:

> [N]either an appraisal nor a judgment that a property's value supports a particular loan amount is a statement of fact.  Each is instead a subjective opinion based on the particular methods and assumptions the appraiser uses.  A subjective opinion is actionable under the Securities Act only if the amended complaint alleges that the speaker did not truly have the opinion at the time it was made public.

*Tsereteli*, 692 F. Supp. 2d at 393.[35]  Here, Plaintiffs have not alleged that appraisers knew their ap-praisals were unreasonable, or that the representations in the Offering documents concerning ap-praised values were known to be false.  Plaintiffs' generalized allegations (Compl. ¶¶ 125-30, 134) about industry-wide appraisal manipulation thus "contain[] insufficient factual amplification to support a plausible inference that the appraisers of the properties underlying the Certificates were

---

[34] *See, e.g.*, Compl. ¶¶ 122-34, 183-87, 189-92, 281-85, 287-90.

[35] *Accord In re IndyMac Mortg.-Backed Sec. Litig.*, 718 F. Supp. 2d 495, 511 (S.D.N.Y. 2010) (dismissing appraisal allegations because appraisals are only actionable "if the complaint alleges that the appraiser did not truly believe the appraisal at the time it was issued"); *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, 2010 WL 1473288, at *7-8 (S.D.N.Y. Mar. 29, 2010) (same); *Footbridge,* 2010 WL 3790810, at *8 (same).

subjected to pressure or that they succumbed to it in a way that violated USPAP." *IndyMac*, 718

F. Supp. 2d at 510.  Plaintiffs' attack on LTVs is also insufficient, as it is "completely derivative of

the improper appraisal practices claim." *Tcsereteli*, 692 F. Supp. 2d at 394.

Because credit ratings are also statements of third-party opinion, *N.J. Carpenters Vacation

Fund v. Royal Bank of Scotland Group, PLC*, 720 F. Supp. 2d 254, 271 (S.D.N.Y. 2010), and be-

cause Plaintiffs here nowhere allege that the credit rating agencies knew them to be inaccurate,

Plaintiffs' allegations about unreliable ratings "do not support a plausible inference that the ratings

did not express [the] rating agency's judgment at the time they were issued about the likelihood

that each Certificate's holder would be paid." *IndyMac*, 718 F. Supp. 2d at 512.[36]  Although Plain-

tiffs vaguely assert that Countrywide provided "flawed information" to the credit agencies (Compl.

¶ 137), they fail to identify any such information.  Such unsupported allegations do not meet the

heightened pleading requirements of Rule 9(b).  *See supra* at 15-16.  That ratings were later down-

graded (*see* Compl. ¶¶ 144, 192) as credit markets seized up and the economy collapsed does not

support a plausible inference that the credit agencies did not believe their ratings when made.

*Tcsereteli*, 692 F. Supp. 2d at 394-95.[37]  These claims must be dismissed.

> ### d.  *Allegations Taken From Other Complaints Or Media Reports*.

"[P]aragraphs in a complaint that are either based on, or rely on, complaints in other actions that

have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within

the meaning of Fed. R. Civ. P. 12(f)," *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403

(S.D.N.Y. 2009), and fail to satisfy the independent investigation requirements of Rule 11.[38]  Be-

---

[36] Moreover, allegations that Countrywide "knew" that the ratings were false (Compl. ¶ 145) are insufficient.  Not only is this allegation conclusory and unsupported, but the focus of inquiry is whether the ratings agency, not Countrywide, believed the opinion at the time it was given.  *See Emp. Ret. Sys of Gov't of V.I. v. J.P. Morgan Chase & Co.*, 2011 WL 1201520, at *10 (S.D.N.Y. Mar. 30, 2011) (dismissing allegations regarding investment ratings where "[P]laintiff does not … allege that the ratings agencies believed … their ratings to be inaccurate").

[37] Nor did Defendants have any duty to report that ratings agencies faced a potential conflict because they were paid by the issuer (*see* Compl. ¶ 139).  *In re Lehman Bros. Sec. & ERISA Litig.*, 684 F. Supp. 2d 485, 492 (S.D.N.Y. 2010) (no duty to disclose rating agencies' supposed conflict of interest); *IndyMac*, 718 F. Supp. 2d at 512 (same).

[38] *See, e.g.*, *Maine State*, slip op. at 37 (C.D. Cal. May 5, 2011) ("Lifting allegations from other complaints does not constitute reasonable investigation as required by Fed. R. Civ. P. 11(b).")

cause most factual allegations in the Complaint simply parrot allegations in other suits, regurgitate reports of investigations allegedly being conducted by governmental agencies, and cite to "loan investigations" allegedly performed by other litigants,[39] they, too, are inadequate.[40]

> **e.** *No Misstatement As To Title Transfer Has Been Pled*.  Plaintiffs argue that Countrywide represented that "the issuing trust for [each] offering had obtained good title to the mortgage loans comprising the pool for the offering," and that this supposed representation was false because Countrywide "routinely failed to comply with the requirements of applicable state laws and the PSAs for valid transfers of the notes."  Compl. ¶¶ 151, 193-94, 291-92. Plaintiffs, however, fail to specify a single statement that Countrywide allegedly made relating to this issue, alleging only that the Offering documents "represented in substance" (*id*. ¶ 151) or in "sum or substance" (*id.* ¶¶ 193, 291) that title was properly transferred.  As such, no actionable misstatement has been alleged.  15 U.S.C. § 78u-4(b)(1); *see also Axis Capital*, 456 F. Supp. 2d at 584 (complaint must "specify the statements that the plaintiff contends were fraudulent….").[41]

> **D.**    **The Complaint Does Not Adequately Allege Scienter.**  To plead fraud, Plaintiffs must allege particularized facts giving rise to a "strong inference" of scienter—*i.e.*, that each Defendant knew the alleged misstatements were false when made.  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006).  Scienter requires factual allegations showing either (1) that De-

---

(Decl. Ex. 36); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) (allegations regarding unrelated litigation involving different securities "have no place in a complaint"); *Geinko v. Padda*, 2002 WL 276236, at *6 n.8 (N.D. Ill. Feb. 27, 2002) (under "Plaintiffs' view of pleading fraud, two plaintiffs could file separate actions each relying on the allegations in the other's complaint and both would state a claim for fraud.  Clearly, Rule 11's requirements do not allow this type of pleading loophole.").

[39] *See, e.g.*, Compl. ¶¶ 6-9, 91-96, 104-19, 127-33, 151-57, 199-204.  Allegations of this sort also are insufficient to plead fraud with the required particularity under Rule 9(b).  *See In re Crude Oil Commodity Litig.,* 2007 WL 1946553, at *8 (S.D.N.Y. 2007) (allegations based upon complaints and settlements involving BP in other suits and news articles about government investigations into BP held insufficient to plead fraudulent intent).  Attached at App. L is a chart listing Plaintiffs' allegations that rely on other lawsuits, investigations and media reports.

[40] Although these allegations about old lawsuits and investigations do not support Plaintiffs' claims, they do show that Plaintiffs' claims are time-barred.

[41] Moreover, Plaintiffs' claims relating to the title transfer are entirely premised on allegations and testimony from a wholly unrelated action regarding a single loan.  Compl. ¶¶ 151-57.  As discussed above (*supra* at 16-17), such allegations are inadequate.

fendants had "both motive and opportunity to commit fraud," or (2) "strong circumstantial evidence of conscious misbehavior or recklessness."  *Id.*  The Complaint does neither.[42]

Plaintiffs attempt to plead scienter by asserting that Defendants knew facts suggesting that their public statements were not accurate.  This is not enough under Rule 9(b).  *First*, none of Plaintiffs' allegations shows that any disclosures in the Offering documents for their specific MBS were intentionally false when made.  Plaintiffs allege that Defendants knowingly or recklessly misrepresented in the Offering materials that the Mortgage Loans "were underwritten pursuant to the Countrywide Defendants' specific loan origination guidelines, that CHL "evaluated the prospective borrowers' credit standing and repayment ability prior to approving any loan," that exceptions to the stated underwriting guidelines could be made if "compensating factors" were present, that mortgaged properties received "an independent appraisal," that the ratings "were accurate reflections of the Certificates' credit quality," and that the issuing trusts possessed "good title" to the Mortgage Loans.  Compl. ¶ 5.  These generic allegations all concern supposed general business and lending practices with no link to the MBS that Plaintiffs actually bought and therefore cannot support the required strong inference of scienter.  *Footbridge* is directly on point.  There, the court dismissed allegations of scienter substantially identical to those made by Plaintiffs here because they were not connected to the particular MBS at issue.  2010 WL 3790810, at *17.  For example, Judge Castel held in *Footbridge*:

> The [complaint] fails to allege scienter with respect to the alleged misstatements regarding the underwriting standards used for the loans included in the Securitizations.  The [complaint] generally alleges that Countrywide's "senior management" was aware that borrowers were submitting fraudulent loan applications, but there is no allegation that loans relating to fraudulent applications were packaged as part of the Securitizations, nor that Countrywide knew that any fraudulent loan applications related to loans in the Securitizations.

*Id.* at *19; *see also id.* at *21.[43]  For the same reasons, the Complaint should be dismissed.[44]

---

[42] Motive and opportunity allegations can support an inference of fraud only if they allege that Defendants stand to benefit in a concrete and personal way from the supposed fraud.  *Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.*, 2003 WL 21088506, at *6 (S.D.N.Y. May 14, 2003).  Plaintiffs here do not.  Indeed, the Complaint does not allege that Defendants owned any of the MBS at issue, much less made any misrepresentations to sell them at a profit.

[43] In fact, the *Footbridge* court dismissed allegations based on some of the same statements on which Plaintiffs rely here.  For example, Plaintiffs cite a complaint from former Countrywide employee Mark Zachary stating that, if borrowers did not qualify for full documentation loans, they

*Second*, the risk warnings in the Offering documents are wholly inconsistent with any intent to defraud. Those warnings explicitly alerted investors that they could lose their entire investment due to market illiquidity or delinquencies and defaults in the underlying loans. For example, the CWABS 2007-9 prospectus supplement warned of the following "Risk Factors":

- "**The Certificates are Backed by Mortgage Loans, Most of Which Will Experience Higher Rates of Delinquency and Loss than Mortgage Loans Underwritten to More Traditional Standards[.]**" Decl. Ex. 41 (CWABS 2007-9 Pro. Supp.) at S-16.

- "On a case by case basis, Countrywide Home Loans, Inc. may determine that, based upon compensating factors, a prospective borrower not strictly qualifying under its applicable underwriting risk category guidelines warrants an underwriting exception. It is expected that a significant number of the mortgage loans will have been originated based on underwriting exceptions of these types. As a result of [CHL]'s underwriting standards, including the origination of mortgage loans based on underwriting exceptions, substantially all of the mortgage loans in the mortgage pool are likely to experience rates of delinquency, foreclosure and bankruptcy that are higher, and that may be substantially higher, than those experienced by mortgage loans underwritten in a more traditional manner." *Id*.

- "Investors should note that delinquencies generally have been increasing with respect to securitizations sponsored by Countrywide . . . ." *Id*. at S-28.

Such disclosures negate any inference of scienter, as the *Footbridge* court found in considering identical disclosures for Countrywide MBS.[45] This Court should reach the same conclusion.

*Third*, the "either/or" nature of the representations about the pooled Mortgage Loans undermines Plaintiffs' scienter allegations. *See supra* at 14-15. As the *Footbridge* court observed: "Plaintiffs do not identify a motive that leads to an inference of scienter that is compelling in light

---

would be "flipped" to reduced documentation loans. Compl. ¶¶ 92, 107-08. The *Footbridge* court held that these very statements did not show scienter. 2010 WL 3790810, at *21.

[44] Plaintiffs assert that the court in *SEC v. Mozilo*, 2010 WL 3656068 (C.D. Cal. Sept. 16, 2010), denied summary judgment as to certain individual Defendants' scienter based on "internal emails, committee notes, memos and deposition testimony" cited in the Complaint. Compl. ¶ 63. That action involved allegations that Countrywide senior officers had knowingly misrepresented the Company's general business practices in public statements in order to influence the stock price, and the court specifically distinguished statements made in MBS prospectus supplements. 2010 WL 3656068, at *3, 11. The present case involves statements in prospectus supplements about the *specific* loans backing the *specific* tranches of MBS in each *specific* offering. Plaintiffs have not tied any alleged misstatement to any particular loans, tranches, or offerings—much less shown that any Defendant was aware that any alleged statements were false when made.

[45] 2010 WL 3790810, at *20 ("Defendants' disclosures about the risk inherent in the investment … and the flexibility of the underwriting guidelines employed for originations of the Mortgage Loans are inconsistent with a state of mind going toward 'deliberate illegal behavior' or 'conduct … which represents an extreme departure from the standards of ordinary care.'").

of defendants' obligation to cure any noncompliant loan."[46]

     **E.**    <u>**Legally Cognizable Injury Is Not Alleged.**</u>  Damages are an element of Plaintiffs'

common law fraud, fraudulent inducement, and negligent misrepresentation claims,[47] and the 1933

Act similarly requires a plaintiff to have suffered actual—not speculative—injury.  *See* 15 U.S.C.

§§ 77k(e), 77*l*(a)(2).  Where—as here—it appears from the complaint that a plaintiff has suffered

no actual injury, the claims must be dismissed.  *In re IPO Sec. Litig.*, 544 F. Supp. 2d 277, 299

(S.D.N.Y. 2008).

     More specifically, the MBS entitle Plaintiffs to receive monthly distributions derived from

payments on the underlying pooled loans.  Compl. ¶ 52.  Those cash flows are protected by various

credit enhancements, detailed in the Offering documents, which protect distributions to Certificate

holders even if there are defaults in the underlying loans and even if the "market prices" of the

MBS decline.  *Id.*  ¶ 47.  Here, the Distribution Reports establish that, as of April 30, 2011, 181 of

the Plaintiffs' 199 Certificates—over 90%—have paid *all* distributions as they came due.  App. M.

Plaintiffs thus have gotten what they bargained for.[48]

     In an effort to manufacture injury, the Complaint asserts (¶ 195) that the Certificates are

"no longer marketable at the prices paid for them by Plaintiffs."  But the Offering documents ex-

---

[46]  The scienter allegations in the Complaint suffer from two additional defects.  First, the Complaint seeks to allege scienter based on events that post-date some or all of the Offerings.  *See, e.g.*, Compl. ¶¶ 77, 84, 88-89, 182.  Such fraud by hindsight pleading is impermissible.  *Footbridge*, 2010 WL 3790810, at *19 ("[A]llegations regarding Countrywide's 'admissions' during an investor call in May 2007 do not support … their allegation that Countrywide knew that the statements were false at the time they were made, *i.e.* June and August of 2006.").  Second, Plaintiffs assume—without any factual basis—that Countrywide's senior executives knew about isolated instances of supposed fraudulent conduct by individual loan officers or appraisers in scattered regional offices.  Compl. ¶¶ 84, 91, 107-09, 111, 113, 116.  Such speculation cannot state a claim.  *See Footbridge*, 2010 WL 3790810, at *20 (dismissing "[g]eneral allegations that loan officers—who are not alleged to be senior corporate officials" submitted fraudulent loan applications or "flip[ed]" applications to reduced documentation to increase chance of approval).

[47]  *See, e.g.*, *Muller-Paisner v. TIAA*, 289 F. App'x 461, 463 (2d Cir. 2008) (fraud); *Eaves v. Designs for Fin., Inc.*, 2011 WL 1236173, at *6-7 (S.D.N.Y. Mar. 30, 2011) (fraudulent inducement); *Shafran v. Harley-Davidson, Inc.*, 2008 WL 763177, at *2 (S.D.N.Y. Mar. 20, 2008) (negligent misrepresentation).

[48]  Plaintiffs allege that they are entitled to rescissory damages for the Certificates they have sold (Compl. ¶ 314), but they nowhere specify which Certificates they sold, when, or for how much.  As such, this allegation does not plead cognizable loss.  *NECA-IBEW*, 743 F. Supp. 2d at 292.

pressly warned that Plaintiffs could not count on a liquid resale market for the Certificates: "We can give no assurance that a secondary market for the certificates will develop or, if it develops, that it will continue.  Consequently, you may not be able to sell your certificates readily or at prices that will enable you to realize your desired yield."  Decl. Ex. 6 (CWALT 2006-J1) at 12.  Courts in this district have held that, as a matter of law, market price declines do not constitute cognizable injury where investors were warned that the securities might not be resalable due to illiquidity. *See, e.g.*, *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 743 F. Supp. 2d 288, 291-92 (S.D.N.Y. 2010) (dismissing § 11 claims).[49]

F.    **Loss Causation Has Not Been Alleged.**  Proximate cause is an element of Plaintiffs' common law fraud, fraudulent inducement, and negligent misrepresentation claims,[50] and their 1933 Act claims are subject to an affirmative defense of "negative causation" that can be asserted on a motion to dismiss where, as here, the defense appears on the face of the complaint or from judicially noticeable facts.[51]  Where the loss "coincides with a marketwide phenomenon causing comparable losses to other investors, the prospect that the plaintiff's loss was caused by the fraud decreases, and a plaintiff's claim fails when it has not adequately [pled] facts which, if proven, would show that its loss was caused by the alleged misstatements as opposed to intervening events."  *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 174, 175 n.4 (2d Cir. 2005); *accord Dura*, 544 U.S. at 342.  Here, however, the Complaint does not connect any claimed losses to the alleged misrepresentations, asserting only that "[t]he ratings on virtually all of the Certificates have

[49] *See also N.J. Carpenters Health Fund v. Residential Capital LLC*, 272 F.R.D. 160, 166 (S.D.N.Y. 2011) (damages cannot be based upon decline in market value where party was forewarned).  Allowing Plaintiffs to allege injury based on the supposed risk of future loss would result in a double recovery, as Plaintiffs could continue to receive the cash flow payments they bargained for while also seeking compensation for decline in market value.  *NECA-IBEW*, 743 F. Supp. 2d at 292 n.1.  Neither the federal securities laws nor state law entitles Plaintiffs to a windfall.

[50] *See, e.g.*, *Muller-Paisner*, 289 F. App'x at 463 (common law fraud); *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769-70 (2d Cir. 1994) (fraudulent inducement); *Goldman v. Strough Real Estate, Inc.*, 2 A.D.3d 677, 678 (negligent misrepresentation).

[51] *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) (where factual basis for affirmative defense appears on face of complaint, motion to dismiss under Rule 12(b)(6) is properly allowed); *Blackmoss Invs. Inc. v. ACA Capital Holdings, Inc.*, 2010 WL 148617, at *9 (S.D.N.Y. Jan. 14, 2010) ("a negative causation defense may be considered on a dismissal motion where the absence of loss causation is apparent on the face of the complaint").

… been downgraded," "the delinquency, bank ownership and foreclosure rates on the underlying mortgages have soared," and the Certificates "are no longer marketable at the prices paid for them by Plaintiffs."  Compl. ¶ 195-96.[52]  Courts routinely take judicial notice of downturns in industries or the economy[53] and dismiss claims for failure to plead loss causation where, as here, plaintiffs failed to apportion claimed losses among disclosure or materialization of the alleged misconduct and market-wide events.[54]  Here, those market-wide events include the fact that, starting in late 2007, housing prices in this country plummeted, the credit markets froze, and the global financial crisis that followed devastated the mortgage industry.[55]  Plaintiffs themselves have acknowledged the impact of this market crisis on their MBS investments.[56]  The Complaint should be dismissed.

> **G.**    **The Section 12 Claims Fail.**  Plaintiffs' § 12 claims must be dismissed because

Plaintiffs have not pleaded that they acquired Certificates *in* the challenged Offerings, as required under § 12(a)(2), as opposed to *the aftermarket*.[57]  Under the 1933 Act, the offering period is de-

---

[52] *See, e.g.*, *McAdams v. McCord*, 584 F.3d 1111, 1115 (8th Cir. 2009) (where plaintiffs failed to allege value of security "right before, or right after" the corrective disclosure, the complaint fails to allege loss causation).

[53] *See Bastian v. Petren Res. Corp.*, 892 F.2d 680, 685 (7th Cir. 1990) (decline in oil and gas industry); *D.E. & J. Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719, 749 & n.26 (E.D. Mich. 2003) (stock market decline after September 11, 2001).

[54] *See, e.g.*, *Luminent Mortg. Cap. Inc. v. Merrill Lynch & Co.*, 652 F. Supp. 2d 576, 593-94 (E.D. Pa. 2009) ("the market downturn in the mortgage industry . . . is sufficient to undermine the inference of a nexus between Defendants' misrepresentations and the performance of the [plaintiff's securities]"); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 2008 WL 2019680, at *13 (S.D.N.Y. May 8, 2008) (dismissing for failure to plead loss causation where complaint failed to distinguish between the alleged fraud and the "market-wide collapse of Internet stocks as the cause of [plaintiff's] losses").

[55] *See, e.g.*, *Kuriakose v. Fed. Home Loan Mortg. Corp.*, No. 08-cv-07281-JFK, slip op. at 33-34 (S.D.N.Y. Mar. 30, 2011) ("Considering that the price of Freddie Mac's stock was clearly linked to the 'marketwide phenomenon' of the housing price collapse, there is a decreased probability that Plaintiffs' losses were caused by fraud.") (Decl. Ex. 48); *In re Countrywide Fin. Corp. Sec. Litig.*, Tr. at 56-57, 66 (C.D. Cal. Feb. 25, 2011) ("a very chaotic period of time in the market and in the economy," "no one can contest what that period of time was like") (Decl. Ex. 45).

[56] For example, TIAA-CREF Life Insurance Company has stated that the impairment of its long term bond holdings, including residential MBS, is primarily attributable to "diminished market liquidity as opposed to a long-term deterioration in credit quality," and that "the Company currently intends … to hold the fixed maturity and equity securities with unrealized losses for a period of time sufficient for them to recover."  TIAA-CREF Life Insurance Co., SEC Form 10-K, at 43 (Mar. 27, 2009) (Decl. Ex. 43).  Similarly, Dexia has publicly acknowledged that that the deterioration of its U.S. residential MBS portfolio in 2008 was in part "due to the depreciation of the US real estate market."  Dexia SA Annual Report, at 59 (Apr. 2, 2009) (Decl. Ex. 44).

[57] *See* 15 U.S.C. § 77*l*(a)(2); *Gustafson*, 513 U.S. at 578 (§ 12 limited to public offerings).

fined as the date of prospectus supplement plus 40 days.  15 U.S.C. §§ 77d(3), 77e(b).  This period establishes the outside date of the public offering—any purchases beyond the prospectus delivery period are, by definition, not "in" the offering and cannot give rise to § 12 liability.[58]  Here, Plaintiffs plead that they first purchased 97 of their 199 Certificates after the prospectus delivery period, and those securities were thus not purchased in the respective Offerings.  *See* Compl. Ex. 1; App. N.[59]  As to the remaining Offerings, generic allegations that Plaintiffs "purchased Certificates issued under or traceable to the registration statements and prospectuses," and that they "acquired . . . Certificates pursuant to or traceable to the Offering Documents" (Compl. ¶¶ 15-17, 247) are insufficient.  That a security may be "traceable" to an offering is insufficient to confer § 12(a)(2) standing, and they have found virtually identical allegations to be insufficient under *Gustafson*.[60]

Plaintiffs' § 12 claims as to 133 Certificates must also be dismissed because Plaintiffs have failed to allege that any Defendant either passed title to any Plaintiff or successfully solicited the purchase of those Certificates motivated by his own financial interest.  *See Pinter v. Dahl,* 486 U.S. 622, 642, 647 (1988).  Plaintiffs allege that they purchased 64 Certificates directly from CSC. Compl. Ex. 5; App. O.  As to the remaining 135 Certificates, however, Plaintiffs plead only that the

---

[58] *See, e.g.*, *Caiafa v. Sea Containers Ltd.*, 331 F. App'x 14, 16-17 (2d Cir. May 19, 2009) ("Plaintiffs have failed to allege that they purchased securities under circumstances requiring the delivery of a prospectus and therefore fail to state a claim[.]"); *In re Wash. Mut., Inc. Sec., Deriv. & ERISA Litig.*, 694 F. Supp. 2d 1192, 1225-26 (W.D. Wash. 2009) (purchase was beyond the prospectus delivery period and therefore "outside the initial offering" where plaintiff certified that it bought the securities "over four months after the initial offering"); *Maine State*, slip op. at 22 (acknowledging that purchases made after the expiration of the 40-day period cannot be considered to be made pursuant to the initial offering) (Decl. Ex. 36).

[59] Even using the longer 90-day prospectus delivery period applicable when "securities of the issuer have not previously been sold pursuant to an earlier effective registration statement," 15 U.S.C. § 77d(3), 70 of the Certificates were first bought outside the Offerings.  App. N.  This longer period is inapplicable, however, as each of the issuers (CWMBS, CWALT, CWABS and CWHEQ) had previously sold securities pursuant to an earlier effective registration statement.

[60] *See, e.g.*, *In re Barclays Bank PLC Sec. Litig.*, No. 09. Civ. 1989 (PAC), slip op. at 11 (S.D.N.Y. Jan. 5, 2011) (dismissing § 12 claims for lack of statutory standing where "Lead Plaintiffs allege only that they bought securities 'issued pursuant and traceable to' the allegedly false and misleading Offering Materials") (Decl. Ex. 49); *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 2010 WL 3239430, at *5 (S.D.N.Y. Aug. 17, 2010) (dismissing § 12(a)(2) claim by purchaser who alleged only that it "acquired Certificates *pursuant and/or traceable to* the Offering Documents"); *N.J. Carpenters Health Fund*, 2010 WL 1473288, at *4 (dismissing § 12(a)(2) claim where plaintiff alleged purchases "*pursuant and traceable to*" the offering documents).

undifferentiated § 12 defendants "promoted and sold Certificates pursuant to the defective Prospectuses for their own financial gain," and that their "solicitation consisted primarily of the preparation and dissemination of the Prospectuses." *Id.* ¶¶ 308-09 & Ex. 5.  Such allegations are insufficient under *Pinter*,[61] and Plaintiffs' § 12 claims as to the MBS they did not buy from CSC must be dismissed.

**H.    The Secondary Liability Claims Are Not Adequately Pleaded.**  Plaintiffs' claims for "control person" liability under § 15 fail because Plaintiffs have failed to plead a primary violation of the 1933 Act.  *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 207 (2d Cir. 2009) (affirming dismissal of plaintiffs' § 15 claim "for want of a primary violation").  In addition, Plaintiffs' blunderbuss, conclusory allegation that all of the § 15 defendants "by virtue of their control, ownership, offices, directorship, and specific acts, w[ere] at the time of the wrongs alleged herein a controlling person . . . within the meaning of Section 15" (Compl. ¶ 317) fails to support any plausible inference that they possessed "the power to direct or cause the direction of management and policies" as required by § 15 to establish control.  17 C.F.R. § 230.405; *Merrill Lynch*, 714 F. Supp. 2d at 485 (plaintiffs' allegations merely constituted a "formulaic recitation of the elements" of § 15).

Moreover, control person claims must be based on particularized allegations sufficient to support an "individualized determination of a defendant's control of the primary violator as well as a defendant's particular culpability."  *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998). "[M]ere allegations of a corporate affiliation," including the alleged ability to appoint directors, "are insufficient to indicate control" by a corporate entity under § 15.  *Merrill Lynch*, 714 F. Supp.

---

[61] *See, e.g.*, *Maine State*, slip op. at 18-19 (preparation of prospectus supplements and participation in road shows to promote the sale of stock does not constitute active solicitation under *Pinter*) (Decl. Ex. 36); s*ee also Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 370 (5th Cir. 2001) (allegations that an issuer promoted an issue by preparing a prospectus or conducting a road show insufficient to plead seller liability under § 12(a)(2)); *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1216 (1st Cir. 1996) ("[N]either involvement in preparation of a registration statement or prospectus nor participation in 'activities' relating to the sale of securities, standing alone, demonstrates the kind of *relationship between defendant and plaintiff* that could establish statutory seller status."); *In re Deutsche Telekom AG Sec. Litig.*, 2002 WL 244597, at *5 (S.D.N.Y. Feb. 20, 2002) ("Plaintiffs' bald allegations of solicitation are insufficient to sustain KfW's section 12(a)(2) liability as a 'seller' pursuant to the second *Pinter* test.").

2d at 485; *In re Global Crossing Ltd. Sec. Litig.*, 2005 WL 1907005, at *10 (S.D.N.Y. Aug. 8, 2005).  Likewise, § 15 liability against individuals requires allegations of "meaningful culpable participation *beyond mere status as an officer or director*."  *P. Stolz*, 166 F. Supp. 2d at 873 (emphasis added).  Because the Complaint lumps Defendants together and relies on corporate affiliations and status[62] instead of particularized facts showing culpable participation, the § 15 claims must be dismissed.

Plaintiffs' aiding and abetting claims also fail because:  (1) Plaintiffs fail to allege a primary fraud claim (*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.,* 651 F. Supp. 2d 155, 186-87 (S.D.N.Y. 2009)); (2) Plaintiffs' conclusory assertions that Defendants "knew" of the alleged fraud (Compl. ¶ 233) are insufficient under Rule 9(b) to plead "actual knowledge" (*Lerner,* 459 F.3d at 292-93); and (3) Plaintiffs' general allegation that Defendants "participated" in the alleged fraud (Compl. ¶¶ 233-34) does not show "substantial assistance" to advance the supposed fraud.  *Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 247 (S.D.N.Y. 1996).

**I.**    **The Successor Liability Claims Should Be Dismissed.**  The Complaint seeks to hold BAC liable solely as CFC's successor-in-interest based on an alleged *de facto* merger between BAC and CFC.  Compl. ¶ 238.[63]  Last month, Judge Pfaelzer dismissed with prejudice a virtually identical successor-liability claim in *Maine State* because the complaint failed to allege plausible facts constituting a Delaware-law *de facto* merger.  *See Maine State,* No. 10-cv-302, 2011 WL 1765509, at *8 (C.D. Cal. Apr. 20, 2011).  In 2009, Judge Pfaelzer dismissed a similar successor-liability claim against BAC in the *Argent* case.[64]  As shown in Appendix P, the successor-liability allegations here closely track those Judge Pfaelzer held deficient in *Maine State* and *Argent*.  *See also* Rosenberg Decl. ¶¶ 2, 11 & Exs. 8, 9, 11.

---

[62] For example, as to CFC, Plaintiffs allege that CFC controlled the Depositors because CFC executives served as their directors and officers and revenues from the sale of the MBS issued by the Depositors were consolidated into CFC's financial statements.  Compl. ¶ 27.

[63] The May 13, 2011 Declaration of Jonathan Rosenberg, Esq. ("Rosenberg Decl."), discusses the facts and allegations relevant to the claim against BAC in greater detail.

[64] *See also Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide Fin. Corp.*, No. CV 07-07097 MRP (MANx) (C.D. Cal. Mar. 19, 2009) (dismissing with prejudice successor-liability claim against BAC based on alleged *de facto* merger with CFC) (Rosenberg Decl., Ex. 10).

As Judge Pfaelzer ruled, the law of Delaware—the state of BAC's, CFC's, NB's and Red Oak's incorporation—governs the Complaint's claim that BAC *de facto* merged with CFC because "the issue of whether an asset transfer constitutes a *de facto* merger is peculiar to corporations." *Maine State*, 2011 WL 1765509, at *4 (applying RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 302).[65] She listed the four factors that courts consider when analyzing whether a complaint pleads a Delaware law *de facto* merger: "(1) was adequate consideration received and held by the transferor corporation in exchange for the assets that were transferred; (2) did the asset transfer comply with the statute governing such asset sale; (3) were creditors or stockholders injured by a failure to comply with the statute governing an asset sale; and (4) was the sale designed to disadvantage shareholders or creditors?" *Id.* at *7.[66] If a complaint does not allege facts showing inadequate consideration received and held for transferred assets *and* that the transfer was designed to disadvantage shareholders or creditors, it cannot state a *de facto* merger claim. *Id.* at *7, 9.

As in *Maine State*, the Complaint here fails to plead any of these factors. It lacks even the minimum allegations that the asset sales were designed to disadvantage stock holders or creditors or that Countrywide did not receive adequate consideration for the transferred assets. Nor could it,

---

[65] Both New York and federal law apply the Restatement (Second) of Conflicts of Law's interest analysis test. *Babcock v. Jackson*, 191 N.E.2d 279, 283-84 (N.Y. 1963) (adopting the Restatement (Second) Conflict of Laws interest analysis approach); *Shaw Family Archives, Ltd. v. CMG Worldwide, Inc.*, 434 F. Supp. 2d 203, 207 (S.D.N.Y. 2006) ("New York follows the rules of interest analysis as set forward in the Second Restatement of Conflicts of Laws."); *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 350 (2d Cir.1992) ("The federal common law choice-of-law rule is to apply the law of the jurisdiction having the greatest interest in the litigation."). *See also Powerup of Se. La., Inc. v. Powerup U.S.A., Inc.*, 1994 WL 543631, at *2 (E.D. La. Oct. 5, 1994) (applying law of parent's state of incorporation to veil-piercing claims because "if it has designed its structure according to the law under which it is incorporated, this court should respect that expectation"); RESTATEMENT (SECOND) CONFLICT OF LAWS § 302 cmt. e (1971) ("Application of the local law of the state of incorporation will usually be supported by those choice-of-law factors favoring the needs of the interstate and international systems, certainty, predictability and uniformity of result….[M]any matters involving a corporation cannot practicably be determined differently in different states. Examples … include … mergers….").

[66] *See also In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1276-77 (N.D. Cal. 2000) (*de facto* merger doctrine does not apply "unless the transaction has been structured to disadvantage creditor or shareholders") (Delaware law); *Heilbrunn v. Sun Chem. Co.*, 146 A.2d 757, 760 (Del. Ch. 1958) (dismissing *de facto* merger allegations where asset purchase complied with Delaware law and complaint lacked allegations of fraud or inadequate consideration).

because as *Maine State* held, CFC received "valuable consideration totaling billions of dollars" that "CFC has retained" in exchange for its assets.  *See id.*, at *8 (*see also* Rosenberg Decl. ¶ 16).

The Complaint points to the pre-*Maine State* decision in *MBIA Ins. Corp. v. Countrywide Home Loan, Inc.*, No. 602825/08 (Sup. Ct., N.Y. County Apr. 27, 2010) (Rosenberg Decl. Ex. 13), where a New York state trial court denied a motion to dismiss a similar *de facto* merger claim. Compl. ¶ 206.  But that decision, on which the *Maine State* plaintiffs also unsuccessfully relied (Rosenberg Decl. ¶ 19 & Ex. 14), mistakenly applied New York law without analysis or explanation and, thus, failed to consider the determinative Delaware-law factors:  (i) established Delaware law recognizing forward triangular mergers (such as the July 1, 2008 merger) as commonplace and legitimate,[67] (ii) Delaware's four *de facto*-merger factors, (iii) the Delaware cases refusing to apply the *de facto* merger doctrine absent intent to harm creditors or shareholders; (iv) the Chancery Court's March 31, 2009 finding that the consideration BAC paid in the July 1, 2008 merger was fair,[68] and (v) the billions of dollars in value that CFC received for its assets.

The Complaint's sole allegation against NB is that it acquired certain unspecified CHL assets.  Compl. ¶ 34.  *Maine State* held similar allegations concerning the same transaction were insufficient to plead a *de facto* merger.  *See Maine State,* 2011 WL 1765509, at *9 (dismissing with prejudice successor-liability claim against NB based on materially identical allegations).  And the public filings that the Complaint incorporates by reference show that just like BAC, NB provided substantial consideration for the assets it acquired—nearly $30 *billion* in the July 3, 2008 transactions alone.  (Rosenberg Decl. ¶ 4; Compl. ¶ 34.)

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed.

---

[67] *See Lewis v. Ward*, 852 A.2d 896, 906 (Del. 2004) ("[T]riangular mergers are common and have a myriad of legitimate justifications.") (internal citation omitted).

[68] *See Maine State*, 2011 WL 1765509, at *8 ("The first transaction, the *de jure merger*, has already been reviewed by the Delaware courts and found to be fair.") (citing *Arkansas Teacher Ret. Sys., et al. v. Caiafa*, 996 A.2d 321 (Del. 2010), *affirming In re Countrywide Corp. S'holders Litig,* 2009 WL 846019, at *14 (Del. Ch. Mar. 31, 2009) ("[T]here is precious little doubt that the consideration received by Countrywide shareholders was anything other than at least fair.")).

Dated:  May 16, 2011                 Respectfully submitted,

                                     By:  __/s/ Brian E. Pastuszenski_____
                                          Brian E. Pastuszenski (*pro hac vice*)
                                          bpastuszenski@goodwinprocter.com
                                          Inez H. Friedman-Boyce (*pro hac vice*)
                                          ifriedmanboyce@goodwinprocter.com
                                          Brian C. Devine (*pro hac vice*)
                                          bdevine@goodwinprocter.com
                                          GOODWIN PROCTER LLP
                                          53 State Street
                                          Boston, Massachusetts  02109
                                          Telephone:  617-570-1000
                                          Facsimile:  617-523-1231

                                          Mark Holland
                                          mholland@goodwinprocter.com
                                          The New York Times Building
                                          620 Eighth Avenue
                                          New York, New York 10018-1405
                                          Tel: (212) 459-7413

                                          *Attorneys for Defendants*
                                          Countrywide Financial Corp. Countrywide Home Loans, Inc.,
                                          Countrywide Capital Markets, LLC, Countrywide Securities
                                          Corp., CWALT, Inc., CWABS, Inc., CWHEQ, Inc., CWMBS,
                                          Inc., and N. Joshua Adler

Dated:  May 16, 2011                 By:  _Jonathan Rosenberg / BEP_____
                                          Jonathan Rosenberg
                                          jrosenberg@omm.com
                                          William Sushon
                                          wsushon@omm.com
                                          Asher L. Rivner
                                          arivner@omm.com
                                          O'MELVENY & MYERS LLP
                                          Times Square Tower
                                          7 Times Square
                                          New York, NY 10036
                                          Telephone:  212-728-5693
                                          Facsimile:  212-326-2061

                                          *Attorneys for Defendants*
                                          Bank of America Corp., BAC Home Loan Servicing, L.P., and
                                          NB Holdings Corp.

Dated:  May 16, 2011            By:   _Ronald Fischetti / BEP_____

                                   Ronald P. Fischetti
                                   rfischetti@fischettilaw.com
                                   Fischetti & Malgieri LLP
                                   747 Third Avenue, 20th Floor
                                   New York, NY  10017
                                   Telephone:  212-593-7100
                                   Facsimile:  212-758-2809

                                   David Siegel (*pro hac vice*)
                                   Dsiegel@irell.com
                                   Matthew Ashley (*pro hac vice*)
                                   Mashley@irell.com
                                   Allison Libeu (*pro hac vice*)
                                   Alibeu@irell.com
                                   IRELL & MANELLA, LLP
                                   1800 Avenue of the Stars, Suite 900
                                   Los Angeles, CA 90067
                                   Telephone:  310-277-1010
                                   Facsimile:  310-203-7199

                                   *Attorneys for Defendant*
                                   Angelo Mozilo

Dated:  May 16, 2011            By:   _Michael Tu / BEP_____

                                   Michael C. Tu (*pro hac vice*)
                                   mtu@orrick.com
                                   Teodora Manolova (pro hac vice)
                                   tmanolova@orrick.com
                                   ORRICK HERRINGTON AND
                                    SUTCLIFFE LLP
                                   777 South Figueroa St., Ste. 3200
                                   Los Angeles, CA 90017
                                   Telephone:  213-629-2020
                                   Facsimile:  213-612-2499

                                   Michael Torpey (*pro hac vice*)
                                   mtorpey@orrick.com
                                   Frank M. Scaduto
                                   fscaduto@orrick.com
                                   ORRICK, HERRINGTON & SUTCLIFFE  LLP
                                   The Orrick Building
                                   405 Howard Street
                                   San Francisco, CA  94105
                                   Telephone:  415-773-5700
                                   Facsimile:  415-773-5759

                                   *Attorneys for Defendant*
                                   David A. Sambol

Dated: May 16, 2011   By: _Keara Gordon /BDP_

         Keara M. Gordon
         keara.gordon@dlapiper.com
         DLA PIPER LLP (US)
         1251 Avenue of the Americas
         New York, New York 10020-1104
         Telephone: 212-335-4500
         Facsimile: 212-335-4501

         David A. Priebe (*pro hac vice*)
         david.priebe@dlapiper.com
         DLA PIPER LLP (US)
         2000 University Avenue
         East Palo Alto, CA 94303
         Telephone: 650-833-2000
         Facsimile: 650-833-2001
         jeff.coopersmith@dlapiper.com

         Shirli Fabbri Weiss (*pro hac vice*)
         shirli.weiss@dlapiper.com
         DLA PIPER LLP (US)
         401 B Street, Suite 1700
         San Diego, CA 92101
         Telephone: 619-699-2700
         Facsimile: 619-699-2701

         *Attorneys for Defendant*
         Eric P. Sieracki

Dated: May 16, 2011   By: _William Sullivan /BDP_

         William F. Sullivan (*pro hac vice*)
         williamsullivan@paulhastings.com
         Joshua G. Hamilton(*pro hac vice*)
         joshuahamilton@paulhastings.com
         PAUL HASTINGS JANOFSKY & WALKER LLP
         515 South Flower Street, 25th Fl.
         Los Angeles, CA 90071-2228
         Telephone: 213-683-6000
         Facsimile: 213-627-0705

         Kevin Logue
         kevinlogue@paulhastings.com
         PAUL HASTINGS JANOFSKY AND WALKER LLP
         75 East 55th Street
         New York, New York 10022
         Telephone: 212-318-6000
         Facsimile: 213-319-4090

*Attorneys for Defendants*
Ranjit Kripalani and Jennifer S. Sandefur

Dated:  May 16, 2011

By:  *Theresa Trzaskoma /BOP*

Theresa Trzaskoma
ttrzaskoma@bruneandrichard.com
BRUNE & RICHARD LLP
One Battery Park Plaza, 34th Floor
New York, NY  10004
Telephone:  212-668-1900
Facsimile:  212-668-0315

Christopher G. Caldwell (*pro hac vice*)
caldwell@caldwell-leslie.com
David Codell (*pro hac vice*)
codell@caldwell-leslie.com
CALDWELL LESLIE AND PROCTOR
1000 Wilshire Blvd Suite 600
Los Angeles, CA 90017
Telephone:  213-629-9040
Facsimile:  213-629-9022

*Attorneys for Defendant*
Stanford L. Kurland

Dated:  May 16, 2011

By  *Leiv Blad /BOP*

Leiv Blad Jr. (*pro hac vice*)
leiv.blad@bingham.com
Zarema V. Arunyunova
zarema.arutnuyova@bingham.com
BINGHAM McCUTCHEN LLP
2020 K Street, NW
Washington, DC  20006
Telephone:  202-373-6000
Facsimile:  202-373-6001

*Attorneys for Defendant*
David A. Spector

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 16, 2011.


                                   <u>/s/ Brian E. Pastuszenski</u>